## Commonwealth ex rel. Skurat *v.* Gearhart, Appellant.

Argued October 6, 1954; reargued March 31, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Howard F. Reed, Jr.,* with him *O. Warren Higgins* and *A. Groh Schneider,* for appellant.

*Allen Grant,* with him *Robert F. Jackson,* for appellee.

OPINION BY HIRT, J., July 21, 1955:

Relatrix and Bartolette H. Wallace were married in 1935. They separated in 1948 and were divorced two years later. They have two sons, Bart H. Wallace, III and Gordon Bruce Wallace, the subjects of this habeas corpus proceeding, who were 13 and 12 years of age at the time of hearing. In March 1950 relatrix went to Caracas, Venezuela. She wanted to take her two children with her but their father would not consent to it. Although her intention was to marry her present husband there, she returned unmarried for the reason that she "missed the boys too much." She went back to Caracas however in the following December and married Mr. Skurat in January 1951.

Relatrix had cared for the children in the home of their father in New York for two years after the separation up to the time of the divorce and for periods thereafter until her remarriage. In August 1951 Wallace determined that it would be in the children's interest if they lived with his mother and her husband in Upper Darby in Delaware County and, except when the relatrix had the children by agreement for limited periods, Florence Gearhart the respondent, has had custody of them. Their father pays her for their support. The Gearhart home is adequate and the boys are well cared for there. They are enrolled in the local public schools and regularly attend a Presbyterian Sunday School. Bartolette Wallace, the father, is a professional musician. It is necessary for him to maintain an apartment in New York because his engage-

ments in television, particularly, are performed there. He spends at least one day each week however at the home of his mother in Upper Darby. He and his mother have bought a summer camp in New York State where they take the boys during their summer vacations. In October 1951 the relatrix and her husband returned to the United States and remained here for a period of almost two months during which the children were with their mother almost every week-end. In the summer of 1952 the boys, by agreement, went to Caracas and lived with the Skurats for about seven weeks. Their mother paid their round trip airflight fare of something over $700. Their father concedes that the children were very happy during their stay in Caracas. Relatrix again returned to the States in May 1953 and Skurat later joined his wife in Philadelphia; the boys were with them during the whole of the summer of that year, on trips into Canada and elsewhere. The relatrix did not return to Caracas with her husband but remained here and has brought this habeas corpus proceeding to test her right to the custody of her children. The court after hearing awarded their custody to her for the period from September 1, 1954, until the end of the school year in 1955, she to pay the costs of their transportation to and from respondent's home. This appeal and the delay occasioned by an order for reargument in this case has resulted in maintaining the status quo and the children are still with the respondent.

This proceeding is exceptional in at least one respect. All of the interested parties are estimable people and at the hearing in this case they all approached the question of the best interests of the children, objectively. Judge VAN RODEN, who heard the case specially presiding, was impressed by their genuine spirit of cooperation and it is conceded that "the boys love

their father, their mother and their grandmother. There is no rancor or bitterness shown." That the Skurats are suitable and proper persons to be entrusted with the custody of the children is not questioned. They are both American citizens. Mr. Skurat is profitably employed as chief engineer for a construction company engaged in the building of power plants in Venezuela. There is testimony that their father has said that if the Skurats should return to the States and establish a home here he would have no objection to their taking the children. Relator's husband will provide an adequate modern single dwelling house in a desirable suburban residential section in Caracas. The children are fond of him and he of them. He is in his middle thirties and has interests which should appeal to these normal boys. He has a softball team and is the president of the Y.M.C.A. baseball league. He also plays "a lot of tennis."

Although a mother's right to custody of her young children is not absolute courts have always recognized the propriety of committing them to the mother. *Com. ex rel. Lucchetti v. Lucchetti,* 166 Pa. Superior Ct. 530, 72 A. 2d 617; *Com. ex rel. Edinger v. Edinger,* 374 Pa. 586, 593, 98 A. 2d 172. But the order in this case does not rest for its validity on the "tender years" doctrine. A child may be of tender years until about age 14 but not necessarily so. Cf. *Russell v. Russell,* 20 Cal. App. 457, 129 P. 467; *Chatwood v. Chatwood* (Wash.), 266 P. 2d 782. The boys in this case, however, now approaching the age of adolescence should live with and have the benefit of the care and guidance of one parent or the other. And in our view their best interests will be served by the award of custody to their mother.

Since the divorce of the parents was at the suit of the wife, we may assume that her husband, the real appellant in this case, is chargeable with the failure

of the marriage. He therefore is not in position to complain that his wife has remarried, nor that her custody entails maintaining the children beyond the jurisdiction of the Pennsylvania Courts. It was her duty to join her husband in Caracas. Under the circumstances the order allowing her to take her children with her will not unduly limit the relationship between the children and their father. Cf. *Commonwealth ex rel. Balla v. Wreski,* 165 Pa. Superior Ct. 6, 67 A. 2d 595. Moreover, the court, based upon the mother's past performance had confidence that she would return the children to their father in accordance with the order and in every respect cooperate in maintaining the ties of affection between him and his children. For that reason a compliance bond was not required. We have confidence in the judgment of the lower court in this respect.

The single question is whether the City of Caracas is a proper place for the rearing of the children, in their best interests. Caracas is a progressive cosmopolitan city with a population of over 800,000. There are more than 30,000 Americans living in the city and about the same number of British citizens who have been attracted for the most part by the opportunities incident to the rapid development of the vast natural resources of the country. Venezuela is a Republic, in form at least, and freedom of religion is guaranteed by its Constitution. Caracas is located on a flat plateau, surrounded by the Andes, at an elevation of about 3,000 feet, with a mean temperature of 70 degrees. The climate is healthful. Any one of three English speaking private schools, two American and one British, will be available and relatrix's husband will pay the tuition fees of about $40 per month for each child.

Under the circumstances the majority of us are of the opinion that relatrix's obligation to her husband

is sufficient reason for placing the children in her care in the City of Caracas. The experience well may be of great value to them.

The order is affirmed in principle. On September 1, 1955 the father and grandmother shall surrender the custody of said children to their mother, Dorothy Skurat. She shall have the right to transport them to her home in Caracas, Venezuela and to maintain them there until the end of the school year in June, 1956, when they shall be returned to the respondent. The expense of transporting the children to and from Caracas shall be borne by the relatrix.

RHODES, P.J. and ROSS, J., dissent.