## Commonwealth ex rel. Sheftic, Appellant, *v.* Sheftic.

Argued April 15, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ. (HIRT, J., absent).

*Archibald M. Matthews,* for appellant.

*Charles H. Coffroth,* for appellee.

OPINION BY ERVIN, J., July 21, 1955:

This is a habeas corpus proceeding instituted on May 19, 1954 by Anne Betters (relatrix), formerly Anne Sheftic, mother of Beverly Sheftic, to obtain custody of the child from Walter J. Sheftic (respondent), father of the child. The lower court, on September 30, 1954, declined the prayer of the petition and continued the custody of the child in the father with the right of visitation to the mother, from which order she appealed.

Theretofore, on March 30, 1951, the lower court had awarded custody to the father with visitation rights to the mother, from which order no appeal was taken. In the opinion accompanying that order, President Judge LANSBERRY said: "Most of the marital difficulties of these parties was caused by an open and notorious love 'affair' on the part of Anne Sheftic with one John Betters, as a result of which Anne Sheftic lost her sense of marital regard for her husband and practically all of her maternal regard for their daughter, Beverly Sheftic, resulting in her living separate and apart from her husband much of the time and away from her daughter part of that same period of time."

The relatrix married John Betters on March 15, 1953 and now resides with her new husband at 788 North Center Avenue, Somerset Borough, Pennsylvania, over a liquor store and beer distributing busi-

ness. Mr. Betters is the father of a son by a former marriage which ended in divorce. The son is in the custody of the mother.

In his present argument, counsel for relatrix concedes the correctness of the original order of March 30, 1951 but contends that, because of changed circumstances in the life of relatrix, custody of the child should now be awarded to her.

Beverly Sheftic was born in Boswell, Somerset County, Pennsylvania, on September 9, 1947 and at the time of the first order she was approximately three and one-half years old. At the time of the last order of September 30, 1954 she was seven years old, and at the time this opinion is being prepared she is nearing the age of eight years. All of her life has been spent in Boswell with the father and his people.

The respondent-father has not remarried. He owns his own six room house in a residential neighborhood in Boswell (occupied by him and his daughter). The home is adjacent to that of his brother, which is occupied by the brother's wife, two children and respondent's mother. The home is also adjacent to a large yard about 60 by 75 feet in size, which is a gathering place for the play of the many young children of the neighborhood. The church attended by the family and the parochial school attended by the child are directly across the street from respondent's home. To assist him in caring for Beverly in his absence when at work during the day he employs Mrs. Helen Miller, a middle-aged woman who lives with her family about a block from respondent's home. Barbara Miller, her daughter, age 17, also helps care for Beverly and acts principally as a baby sitter. Barbara Miller took care of Beverly in this capacity several years ago, when she was engaged to do so by relatrix herself when she and respondent were still living together as husband

and wife. Mrs. Miller and her daughter Barbara are the same persons who were helping respondent care for the child at and prior to the initial hearing in the case. Although respondent lives alone with his daughter, to a large extent they form a part of his brother's family group, who live next door. Respondent and his daughter have their evening meal regularly with this family group. Beverly has her lunch with Mrs. Miller. Mrs. Miller changes Beverly's clothes after school in the afternoon. The father prepares the child's breakfast before going to his work. He testified that he gets home 98% of the time before six o'clock and that he usually helped the child with her lessons. If he went out, Barbara Miller was there to look after the child and quite regularly slept in the house all night. The father testified that his salary was between nine and ten thousand dollars a year as a partner in a business with his brother. Beverly has many playmates in Boswell with whom she has associated most of her life.

In Somerset there is no parochial school and the child would be obliged to go to a public school and to make new friends. All of the parties are Roman Catholic but the relatrix and her present husband, because of their divorce and remarriage, are not permitted to take communion in the Catholic church.

We agree with the lower court that "Beverly Sheftic is now a well adjusted and happy child. This was not always so. This latter fact was one of the prime considerations resulting in the original determination and order in this case. Time has demonstrated that since she has been in the actual custody and home of her father, she is not the nervous, domineering, restless and uncompanionable child she was prior thereto; her attitudes and personality are now befitting her attractive and personable features and she continues to grow to be a lovable little girl. She has not been ne-

glected while in the custody of her father and it is manifest that her environment has been most wholesome and rewarding in that custody. . ." Six witnesses testified that since she has been with her father she has undergone a considerable and favorable change in her manner, demeanor and behavior, and that she is more calm and much less nervous and that she is a different child than what she was prior to that custody.

What was said by President Judge RHODES in *Com. ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 369, 57 A. 2d 610, is particularly applicable to the present case: "In the present case, we are of the opinion that the order of the court below cannot be justified solely on the principle that a child of tender years should be committed to the care and custody of its mother. Her right thereto is not absolute; it must yield to the best interest and welfare of the child. Latney's Appeal, 146 Pa. Superior Ct. 20, 22, 21 A. 2d 521. Moreover, a father's right is not to be entirely ignored, as it is his obligation to maintain and educate his child. Com. ex rel. Welsh v. Welsh, 96 Pa. Superior Ct. 426, 429. This is especially true if his home in which the child has lived since birth is a comfortable, proper, and satisfactory home, and in which the child receives requisite supervision and adequate care. The court below in its opinion in the present case said: 'A number of witnesses were called whose integrity can in no way be questioned and they all agree the Swartzwelder home is well kept, attractive and a good home in which to raise a child; that Frank, Junior, goes to Sunday School, Bible School, is polite, courteous and shows good training.'

"Although the relatrix' past conduct may not be a compelling reason to deprive her of the custody of the child, it is a factor for consideration in connection with the general situation. We are not convinced, from an

examination of the testimony, that relatrix has sustained the averment of her petition that respondent is not a fit person to have the custody of their child. As to individual fitness, there may be no substantial basis for choosing between them. But we are of the opinion that the interest and welfare of this child will be best subserved if he remains under his father's care, and the present living arrangements which have been conducive to the happiness and well-being of the child are continued. See Com. ex rel. Goldbaum v. Goldbaum, 161 Pa. Superior Ct. 131, 134, 53 A. 2d 746. The child's present home is satisfactory; it is in a good neighborhood; it is near the school and church which the child attends. The record is devoid of any indication that the child is not well cared for. There is much positive testimony showing the satisfactory surroundings and the healthy home life of the child. This is recognized in the opinion of the court below."

On the other hand, the prospective home offered by relatrix in Somerset is not as desirable as the home in Boswell. It is a second floor apartment in the commercial section of the borough above a liquor store and beer distributing business. While the present husband of relatrix has adequate earnings to support a family and has indicated his willingness to have Beverly in that home, it is impossible to determine with absolute certainty that he would continue in the future to be so disposed. The usual rule of law to the effect that it is preferable that the custody of a child of tender years be given to the mother is not applicable to this case because when this child most needed the mother's care, it was not provided. At that time the mother was more interested in seeking her own pleasure. The father is the one who remained steadfast and provided loving care for the child during the most formative years of its life. The effect of that care

upon the child is not an unknown quantity. The child has been happy and well and has developed normally. The lower court had the opportunity of observing the development of this child as she was when her mother had custody and as she became after her father received custody. There is no need for theoretical discussion because the value of respondent's home from the standpoint of basic stability has been tested. We agree with the lower court's summation that "Since Beverly Sheftic has been in the custody of her father, she has shown exceptional development in her behavior, particularly in the presence and company of other children and playmates and presently appears to be living a more normal child's life than when she was in the custody of her mother." There is no good reason for the Court to exchange the known certainty of a good home with the father for the uncertainty of life with the mother. What we said in *Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 416, 417, 74 A. 2d 790, is applicable here: "Therefore we will not direct the separation of the child from its foster parents, the respondents, or its removal from their care and devotion to expose it to the questionable penitence of the relatrix." The language quoted with approval in *Com. ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 95, 96, 66 A. 2d 300, is also applicable to this case: " 'The right of the father must be considered; the right of the one who has filled the parental place for years should be considered. Perhaps it may not be technically correct to speak of that as a right; and yet, they who have for years filled the place of the parent, have discharged all the obligations of care and support, and especially when they have discharged these duties during those years of infancy when the burden is especially heavy, when the labor and care are of a kind whose value cannot be expressed in money when all

these labors have been performed and the child has bloomed into bright and happy girlhood, it is but fair and proper that their previous faithfulness, and the interest and affection which these labors have created in them, should be respected.' "

After carefully reading the entire record in this case we come to the independent conclusion that the best interest and permanent future welfare of this child will be attained by leaving custody with the father with reasonable rights of visitation to the mother.

Order affirmed.