## Commonwealth ex rel. Jacobson *v.* Jacobson, Appellant.

Argued April 9, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Daniel Marcu,* for appellant.

*Harry W. Steinbrook,* with him *Blanc, Steinberg, Balder & Steinbrook,* for appellee.

OPINION BY HIRT, J., July 17, 1956:

The present contest between these parents over the custody of their children began on October 15, 1952 when the father petitioned the court for an order under the Act of June 26, 1895, P. L. 316, 48 PS §92,

giving the stamp of judicial approval to custody of his children which he had arrogated to himself on separating from his wife. This proceeding by the husband inspired a counter habeas corpus proceeding by the wife, on the next day, in which she sought to regain possession of her children.

Following their marriage on June 28, 1946, the parties lived in a dwelling at 5665 Springfield Avenue in Philadelphia which the respondent had purchased. He, a practicing physician, also had his offices on the premises. Twin girls were born on April 27, 1947. They separated on May 29, 1952 when the respondent, taking the children with him placed them in the home of his sister, Mrs. Ruth Levin, in Northeast Philadelphia where they were adequately cared for by her. This arrangement was approved by the lower court by an order on June 26, 1953, giving "temporary" custody of the children to their father. That order was revoked on September 10, 1954, when the court awarded custody, again as a temporary measure, to the mother. More than four and one-half years after the initial proceedings were brought (and 550 pages later in the present record, as developed at no fewer than eleven hearings) Judge BONNELLY, who presided throughout and who most patiently heard all of the charges and counter charges of the parties, affirmed his order of September 1954 and awarded custody of the children to their mother subject to the right of the father to have the children on alternate weekends. It is from this order entered on March 1, 1956, that an appeal was taken. A second appeal before us is from an order directing the defendant to pay sixty dollars per week for the support of his children.

Since the decision in the custody proceedings depended largely upon the credibility of the parties and their witnesses, we might satisfy the requirement of

the law (*Com. ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350) by summarily affirming the order of the court below on that ground. This case however clearly reflects the propriety of our insistence that in custody cases in the Municipal Court successive hearings throughout the entire proceedings shall be before the same judge who first heard the parties. In our view, also, the factual background of the various orders and particularly the testimony developed at three hearings between May and December 1955 on which the court based its final order, call for some comment.

Following the separation the relatrix went to live with her mother and after the award of the custody of the children to her the children have continued to be a part of the household of Mrs. Greenberg (relatrix's mother). The home, in an apartment house overlooking Rittenhouse Square in Philadelphia is commodious and adequate in every respect. Mrs. Greenberg apparently is a woman of means and she has the welfare of her daughter and of her grand-daughters at heart. The respondent testified to the generosity of his wife's mother beginning with the date of their marriage. He said that she "overwhelmed us with gifts" with "no strings attached." She gave him $10,000; she furnished the home and later gave him $12,000 to pay off a mortgage on the premises.

The trouble began during the pregnancy of the wife in the fall of 1946 when according to the respondent, she suffered periods of great pain. To relieve her he gave her an injection of Demerol and he repeated the injections at intervals until the birth of the children, and even thereafter, as he said to relieve "severe itching from the Procaine used for the treatment of her teeth by a dentist." During her pregnancy beginning in the third month, respondent admitted giving her 20 to 30 injections of Demerol, a proprietary narcotic.

As a result of the repeated administering of this drug which was entirely of his selection, she became an involuntary user, dependent on the drug and later a confirmed addict. We find it difficult to give credence to respondent's statement that in administering Demerol, he did not believe that it could be habit forming. He was a qualified practicing physician; he could acquire the drug only through the usual legitimate channels by compliance with Federal restrictions; he knew Demerol was a narcotic; he states: "I had to file a narcotic form and send it to the manufacturing company." The drug could be obtained only by this method under narcotic regulations. And the label on the bottle which described Demerol as a narcotic in itself should have put the respondent on his guard in its use. There is impressive medical testimony that a physician would not likely use "a drug which is labeled as a narcotic, and officially stated to be a narcotic, without recognition of its danger as to addiction." The conduct of relatrix which her husband emphasizes as disqualifying her from having her children is her addiction to Demerol which he himself brought about, by administering it to her. He conceded on one occasion that he had brought about his wife's drug addiction, but here he testified that he made the statement to exculpate his wife; he said: "I was trying to protect Mrs. Jacobson." For reasons best known to himself, and it may or may not be significant, occasionally prescriptions for Demerol which he administered to her were made out by him in the name of a "Mr. Greenberg." Since respondent either knew or should have known the danger in administering Demerol, his sincerity, in the light of his intelligence, in stating that he believed Demerol to be non-habit forming, was open to question, to say the least.

The credible testimony is that respondent drove his wife from the home on May 29, 1952. He denied that however, and in his petition for an order in this proceeding he alleged that the final separation was the "results of [the wife's] commission of such indignities upon [his] person as to render his condition intolerable and life burdensome." Again, bearing upon the sincerity of his contention to that effect, it is significant that it was on proof of his indignities and his cruel and barbarous treatment, at the suit of the wife, that a divorce from him was granted to her on April 9, 1954. (And he married his present wife eight days later).

Even though the respondent was responsible for his wife's drug addiction, she is not entitled to custody of her children for that reason if she thereby is made incompetent to care for them properly. Their future interest and welfare are the controlling considerations. *Com. ex rel. Batch v. Barber et vir,* 161 Pa. Superior Ct. 82, 54 A. 2d 47. But generally the right of a mother to have her young children is superior to all others, for ordinarily the interests of a child can best be served by maternal care. *Com. ex rel. Gates v. Gates,* 161 Pa. Superior Ct. 423, 55 A. 2d 562.

There is no question as to the depth of relatrix's addiction to Demerol. When deprived of it she acquired the drug to satisfy her need by every means, legitimate and otherwise. But her struggle to emerge from compulsive use of the drug has been little less than heroic. She was in Friend's Hospital in Philadelphia for observation from June 19, 1950 to July 14, 1950. The report of the staff conference there diagnosed her condition as "drug addiction without psychosis." Psychiatric therapy was the treatment prescribed. Respondent later took her to Lexington Kentucky and committed her to a Federal hospital where she remained from October 16, 1950 to February 28, 1951; he visited

her but twice during that period. She also was in Pennsylvania Hospital in Philadelphia from May 7 to 14, 1954. In the order of March 1, 1956, Judge BON-NELLY, after consideration of all of the evidence, in the opinion filed, stated: "The record discloses that through the tender care of Shirley's mother and with the expenditure of untold sums of money for medical and mental care and attention she has recovered from her addiction. Her mental outlook is fine. Her physical condition normal. She is now fully able to take care of her twins."

This statement has ample support in the testimony. Relatrix testified that she had taken no narcotics nor even barbituates since September 10, 1954 and there is no credible proof to the contrary. A highly competent medical witness testified: that the scars on her arms are all old scars; that there is no evidence of the recent taking of narcotics either orally or by injection and that she appears well adjusted. Another medical witness of equally high standing stated "that relatrix has been free for 1½ years from her former drug habit; that she is now well poised, mature, and self reliant and entirely capable of caring for her children." A third medical witness, a specialist in psychiatry, testified that she has been his patient since August 17, 1954; that her present mental and physical condition is excellent and that she now is an effective mother. He is still seeing her and will be available for "supervision", in case of need. In the light of the *Eastridge* case, supra, to state our impressions from the testimony may be out of place. But we cannot refrain from the comment that, particularly throughout the recent hearings in the lower court, the relatrix was well poised; she conducted herself with dignity and self-confidence, in spite of humiliating cross-examination at times by two or three lawyers who represented respondent in

succession. There is no evidence of permanent damage to this mother's moral fiber, by her drug addiction in the past. In that connection Judge BONNELLY, near the close of the last hearing, stated: "[The question is] whether the court is convinced that she is a fit mother for the children. We have seen her this morning, her demeanor, her composure under cross-examination, and she is entirely different than she was two years ago. It is apparent to the Court this attempt to destroy whatever rationality and equanimity she has been able to establish in the past years has failed. That is the end of the examination."

The conclusions of the trial judge and the order of the court are amply supported by the evidence. The burden was on this appellant to prove that the order was based on error of law or was otherwise erroneous. *Com. ex rel. Hough v. Hough,* 178 Pa. Superior Ct. 484, 116 A. 2d 274. The appellant has not met that test. What the court knew of the background of relatrix, entered into the final order in this case. This knowledge however was not gained from investigator's reports (Cf. *Com. ex rel. Balick v. Balick,* 172 Pa. Superior Ct. 196, 92 A. 2d 703) but from Judge BONNELLY's own observation of the relatrix throughout the succession of hearings over a period of more than four years. A trial judge is not obliged to shut his eyes to the obvious. And what he observes as to the changing physical or mental condition of a party to the proceedings or changes in the condition of the children, over a period, may properly enter into the court's disposition of the case. Cf. *Com. ex rel. Sheftic v. Sheftic,* 178 Pa. Superior Ct. 649, 655, 115 A. 2d 861. Moreover the exclusion of testimony of relatrix's physical condition and her conduct while an involuntary user of the drug was proper. The issue before the lower court was the relatrix's present fitness and not the

nature nor extent of her past misconduct. *Com. ex rel. Chumard v. Chumard,* 168 Pa. Superior Ct. 188, 77 A. 2d 660.

In the second appeal there is no merit in respondent's contention that the order for support of the children, increased from $40 to $60 per week, is excessive. An order, in general, is based upon the appellant's property, income and earning ability at the time of the hearing. *Com. ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437. The credibility of respondent in his testimony as to the extent of his earnings and other income was for the court. We cannot say that the order is excessive in the light of respondent's financial resources.

Orders affirmed.