Commonwealth ex rel. O'Hey *v.* McCurdy, Appellant.

Argued June 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before HONEYMAN, J.

*Nochem S. Winnet,* with him *Thomas B. Moreland Porter, Jr.,* and *Foulke, Knight & Porter,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*William F. Fox,* with him *Fox, Differ, DiGiacomo & Lowe,* for appellee.

OPINION BY ERVIN, J., September 12, 1961:

This appeal concerns a controversy between divorced parents over the custody of four of their five children.

By a decree dated February 8, 1961 custody was given to the mother with liberal visitation rights

(ninety-nine days per year) to the father. The parties were married August 7, 1948 and were divorced on July 10, 1960. There were five children born as a result of the marriage, viz., John McCurdy, Jr., 11 years of age; Anne McCurdy, 10 years of age; Edward McCurdy, 7 years of age; James McCurdy, 5 years of age; and David McCurdy, 18 months old. The four oldest children are the subjects of this proceeding brought by the mother.

On February 2, 1960 the mother removed from the marital domicile and on February 27, 1960 entered into a written separation agreement under which the youngest of the five children (David) was to remain in the custody of the mother and the other four children were to remain in the custody of the father.

The marital domicile was a five bedroom home in Wyndmoor, Montgomery County, Pennsylvania, and the father still maintains this as his residence. From the time of the separation of the parties until the order of the court below dated February 8, 1961, the four oldest children resided in said home with their father.

After the separation the mother and her youngest child lived with her brother for awhile and then in a one-bedroom apartment with a kitchen and dinette and a living room and bath. She had a separate income of about $2,000.00 a year. She testified that she didn't want anything from her husband.

The mother married her present husband, a practicing attorney in Montgomery County, on August 4, 1960. Subsequent to her remarriage she and her present husband moved into a home that is comparable in size and facilities to the Wyndmoor home of the father.

At the present time the father of the children is away at work every weekday and the care of the four oldest children has been left to the maid who has been in the employ of the father for seven years. The mother is not otherwise employed than as a housewife.

In an attempt to show that the mother was not a fit person to care for her four oldest children, the father and a maid testified that the mother had a drinking problem, was basically immature and couldn't accept the responsibility of children.

A psychiatrist testified on behalf of the father that, based upon a few interviews with the mother, he thought she had an emotional problem which he characterized as an immature reaction but that she was not psychotic. His interviews with the mother occurred in 1959 when she was having severe marital difficulties. The doctor testified that with time and a better emotional environment than that in which she was living at the time of the interviews her emotional problem could improve.

The mother denied that she had a drinking problem and presented a number of witnesses to corroborate her testimony. The father also testified that his wife was away from home an average of two days a week, golfing, swimming, bowling, etc. The mother was quite athletic and played golf on the first team of the Merion Golf Club. The mother denied that her athletic activities interfered with the proper attention to her children. She testified in detail as to the care which she bestowed upon them.

About five years before the final separation she told her husband she did not love him anymore but agreed to stay with him for the children's sake. The relations apparently became so strained that both parties were emotionally upset and both consulted a psychiatrist.

Judge HONEYMAN in his opinion stated: "There is nothing before this Court that would show that either parent is an unfit person to care for the children. There was ample testimony to convince this Court that the mother has no drinking problem and is prepared to resume her role as a mother of her four oldest chil-

dren. There is every reason to believe that their religious, educational and physical well-being can properly be taken care of by her. As the mother of the children, their interests will better be served by her daily guidance than the ministrations of a maid."

In a custody case we are bound by the findings of the trial court. In *Com. ex rel. Harry v. Eastridge,* 374 Pa. 172, 177, 97 A. 2d 350, our Supreme Court said: "Appeals to the Superior Court in proceedings for the custody of children are governed by the Act of July 11, 1917, P. L. 817, sec. 1, 12 PS 1874, which provides that the Court '. . . shall consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong.' The scope of review is thus considerably broader than in adoption cases, which come before an appellate court as on certiorari: Helen Frances Young's Adoption, 259 Pa. 573, 103 A. 344; Davies Adoption Case, 353 Pa. 579, 46 A. 2d 252; Susko Adoption Case, 363 Pa. 78, 69 A. 2d 132.

"But this broader power of review was never intended to mean that an appellate court is free to nullify the fact-finding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear: . . . ."

We have made an independent review of all the testimony in this case and agree with the findings of the court below.

Unless compelling reasons appear to the contrary a child of tender years should be committed to the care and custody of its mother, by whom the needs of the child are ordinarily best served. A mother is best qualified to have the custody of a child of tender years be-

cause nothing can take the place of a real mother's love. These children were 5, 7, 10 and 11 years of age and are children of a "tender age": *Com. ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (9 and 7 years of age); *Com ex rel. Mann v. Mann,* 181 Pa. Superior Ct. 438, 124 A. 2d 432 (9 years of age); *Com. ex rel. Skurat v. Gearhart,* 178 Pa. Superior Ct. 245, 115 A. 2d 395 (12 and 13 years of age); *Com. ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437 (8 and 10 years of age); *Com. ex rel. Lamberson v. Batyko,* 157 Pa. Superior Ct. 389, 43 A. 2d 364 (6½ years of age).

It is desirable that all of the brothers and sisters be kept together.

Judge HONEYMAN had the benefit of a discussion with the two oldest children to aid him in the determination of this case. Although the expressed wishes of the children are not controlling, they constitute a factor which should be carefully considered: *Com. ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 176, 116 A. 2d 336.

Order affirmed.

WATKINS, J., dissents.