Commonwealth ex rel. Kudack *v.* Sabo, Appellant.

162

Argued April 10, 1962. Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

*Barron P. McCune*, with him *Stephen I. Richman*, and *McCune and Greenlee*, for appellant.

*Sanford S. Finder*, for appellee.

Opinion by Flood, J., June 13, 1962:

This is an appeal from an order of the court below awarding the custody of a six year old girl to her father.

The parents were divorced in April 1959. Thereafter the child lived with her mother. The father contributed $10 per week to his wife for the support of the child and was given visitation rights on Wednesdays and sometimes on Saturdays and Sundays.

On December 13, 1960, the father commenced the present proceedings by causing a writ of habeas corpus

to be issued to obtain his daughter's custody. On January 4, 1961, the mother married Joseph Sabo with whom she now resides.

The court below concluded that the custody should be transferred to the father. In the course of his opinion, the hearing judge indicated that the following considerations moved him to make the order: (1) The mother is not qualified to care for the child and cannot provide a proper home for her at this time. (2) The father is qualified to care for the child and has provided a suitable home for her. (3) The court was impressed with the testimony of the father and his witnesses and found that the mother and her witnesses lacked credibility. (4) The mother had been involved in certain adulterous relationships. (5) She had carried on a long and continuous course of conduct of frequenting clubs and bars where alcoholic liquors were sold and consumed. (6) She often took the child with her and at other times left her alone at home or on the streets. (7) She lives in a trailer camp with her present husband, a man who is sixty-nine years of age, while she is only twenty-eight years of age. (8) The trailer camp is in a rural area where the child would enjoy little companionship with children of her own age. (9) The mother has been engaged in a continuous course of questionable conduct for a long time and has placed the child in an environment that would not be good for her. (10) The court is not satisfied that the mother will change her ways, but if she does, she may reopen the case at any time. (11) Since her marriage to Joseph Sabo the mother has left the child for extended periods of time in the custody of this elderly man who has never had any experience with children. (12) While Mr. Sabo makes $500 a month and his income is sufficient to care for the child, he has no legal duty to do so, and the court is of the opinion that the child might not benefit from

his income and, further, that his employment may soon terminate. (13) The stepfather's inconsistent testimony with regard to the child's religious training indicates that he has little to qualify him as a person to stand in loco parentis to the child during the absences of the mother from the home. (14) The sudden marriage of the mother, who has lost the greater part of her eyesight and is now receiving a blind pension, and her decision to keep custody of the child, if possible, is motivated by a desire on her part to render her own financial position more secure. (15) While the mother's changed circumstances and environment indicate that she may no longer be a behavioral problem, the child may be converted into a housekeeper and caretaker for her blind mother and her stepfather and be denied "the life of a child". (16) The father lives with his mother in a five room house with two bedrooms, and the child's grandmother, who is fifty-eight years old, will care for her while the father is out of the home. (17) The father is employed as a steward in the Veterans of Foreign Wars Post at $75 a week and the rent of the house in which the child would live is $30 a month, half of which will be paid by the grandmother.

The court concluded that, under the circumstances, the child's best interests would be served by permitting her to live in the father's home rather than in the trailer camp and that, considering the age of the child, her physical condition and well being, the residence in which she would live, the education she would be offered, and the social and moral training she would receive, custody should be given to the father, allowing the mother liberal and adequate rights of visitation and partial custody and the future right to seek amendments to the order of custody.

The appellant concedes that the credibility of the witnesses and the weight to be given their testimony

by reason of their character, intelligence and knowledge of the subject matter can best be determined by the hearing judge. See *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A. 2d 350 (1953). She contends, however, that many of the findings upon which the hearing judge based his decision were not supported in the testimony and that he did not give sufficient consideration to the so-called tender years doctrine. She argues further that he based his opinion largely upon the superiority of the father's home to that which the mother could provide. Finally, she objects that his finding of excessive drinking and immorality on her part relates to a time in the past and that there is no basis in the testimony for finding that she engages in these practices at the present time.

In cases such as this the statutory mandate is that, in determining custody as between the two parents, regard shall first be had "to the fitness of such parent and the best interest and permanent welfare of said child": Act of June 26, 1895, P. L. 316, §2, 48 PS §92. In determining this question this court has many times indicated that the court should award custody of a child of tender years to the mother unless there are compelling reasons for not doing so. *Commonwealth ex rel. O'Hey v. McCurdy*, 196 Pa. Superior Ct. 79, 173 A. 2d 672 (1961); *Commonwealth ex rel. Bender v. Bender*, 197 Pa. Superior Ct. 397, 178 A. 2d 779 (1962).

In the *Bender* case, supra, custody of the two children of tender years had been granted to the father because of the mother's illness. She had apparently suffered from a mental disease and, while she was so suffering, used narcotics and was an excessive drinker. Five years later the court transferred custody to the mother, apparently believing that she was cured and had become emotionally stable. The hearing judge had before him the testimony as to her conduct over

the intervening period. Apparently for more than a year before the hearing, the mother had custody of the children over the week-ends. Both parents could furnish good homes for the children. We affirmed the decision of the lower court transferring custody to the mother. However, we do not have a similar situation in the case before us. The testimony believed by the hearing judge indicates that the mother's improper conduct extended up to the time of her marriage in January 1961, a few weeks before the hearing and after the writ had been issued. There is testimony that the child was found playing in a neighbor's back yard when the mother was not at home, that she was found playing in an alley behind the taproom where the mother was drinking or otherwise amusing herself and that on other occasions she was in drinking places with the mother late in the evenings.

While the hearing judge found that the mother, by reason of her marriage, the distance of her present home from her old haunts and the near-blindness which has come upon her, would probably no longer be a behavioral problem, we cannot say that he did not properly exercise his discretion in finding that she had not yet evidenced such a settled change in her behavior as would make her fit to take care of the child. Her changed conduct extending over only a few months might well be viewed skeptically by the court, considering her long continued improper behavior.

The appellant objects particularly to findings 7, 8, 9 and 10 made by the court below.

Finding 7 is that the married life of the parents had not been happy and each had the other arrested a few times but withdrew the charges. This seems to be fully supported by the testimony. The appellant argues that since she was the successful plaintiff in the divorce suit on the ground of cruelty the court was

barred from finding that the responsibility for the failure of the marriage had been mutual. However, the court did not base its decision upon this fact and if there was error in this finding we are not persuaded that the order should be modified because of this error. The important question here is the conduct of the parties since the divorce.

Finding 8 is that "there was testimony by reliable witnesses, a policeman and a constable, that respondent became intoxicated and disorderly". This is objected to because neither of those witnesses said that defendant was intoxicated. However, the testimony of the policeman is that he was called to a tavern at night, that the mother was there with the child and the father wanted to take the child home, and that the mother was drinking with somebody and consented to let the father take the child home. The testimony of the constable was that he went with the father at 9 P. M. one evening to return the child to the mother, that she had not arrived home at a quarter to ten, that they then took the child to the father's home and put it to bed, that the mother called about eleven and appeared at the house ten minutes later, that she "was drinking" and got "very unruly" and that later on the street she was disorderly, using "cuss" words, and he arrested her for disorderly conduct. The testimony is replete with evidence that she visited taprooms and places where liquor was sold very frequently, and stayed there for hours at a time. Even if this evidence falls short of supporting the literal finding of the court, it furnishes a proper basis for the court's conclusion.

Finding 9 is that she was addicted to the excessive use of alcoholic beverages and would leave her child either alone or in unreliable custody. In our opinion, there was adequate evidence to support this crucial finding.

Finding 10 is that the mother's conduct with the opposite sex was so indiscreet that reputable citizens were willing to so testify against her. There was testimony by one man that she had committed adultery with him some years before, other testimony of her spending the evening with a married man and, finally, testimony that her present husband before the marriage would visit her until very late in the morning. The court did not find that she was guilty of improper conduct since her marriage to Mr. Sabo.

The burden is upon the appellant to establish that the order of the court below is erroneous or that it is based upon error of law. *Commonwealth ex rel. Bender v. Bender,* 197 Pa. Superior Ct. 397, 403, 178 A. 2d 779, 781 (1962). We find no such error. The evidence that the mother frequently took the child with her to drinking places and on occasion had her there late at night, that on one occasion the child was found alone in an alley behind the place where the mother was drinking, and the evidence of the mother's frequenting of taprooms and indiscreet conduct with men up until just before her marriage, appears to us sufficient basis for the court's order. The mother's right to custody of a young child is not absolute and must yield to the best interest and welfare of the child. *Commonwealth ex rel. Sheftic v. Sheftic,* 178 Pa. Superior Ct. 649, 115 A. 2d 861 (1955). The short period of the respondent's apparent reformation justified the court in not accepting her fitness without further testing. *Commonwealth ex rel. Buell v. Buell,* 186 Pa. Superior Ct. 468, 142 A. 2d 338 (1958). The hearing judge will no doubt keep informed of the situation, and transfer the custody of this young child to its mother whenever it appears that she has so changed her habits as to make it safe to entrust the child to her. The court below did not commit error in denying the respondent custody of the child under the cir-

cumstances shown to exist at the time of the hearing. *Commonwealth ex rel. Buell v. Buell,* supra; *Commonwealth ex rel. Sheftic v. Sheftic,* supra.

Order affirmed.