## Commonwealth ex rel. Swanson, Appellant, *v.* Barry.

Argued June 15, 1962. Before RHODES, P. J., WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (ERVIN, J., absent).

*Daniel Marcu,* for appellant.

*Paul Leo McSorley,* for appellee.

Opinion by Flood, J., September 13, 1962:

In this proceeding a mother seeks for the second time to gain custody of her two daughters, Kathleen Barry, born November 1950 and Allison Barry, born May 1955. Her original petition was denied in an order dated October 19, 1959, from which no appeal was taken. The present petition alleges a change of circumstances in that the petitioner has divorced the respondent, remarried and now resides with her present husband at the Maguire Air Force Base, New Jersey, the children are now at a tender age which requires the constant care and guidance of their mother, they live in a home where they lack the proper environment, guidance and association which their welfare requires and sleep in the same room with an adult. The petition also sets forth that the mother has prepared a pleasant home for them in a good environment and has made arrangements for their proper education.

After hearing testimony in support of this petition, the court below held that the evidence of change of circumstances since the 1959 order was insufficient to warrant a change in custody.

The relatrix argues that the children were living happily with her when the appellee took them from her in 1959 and that he took them and insists on keeping them to inflict punishment on her. The matter of his taking the children from her was before the court in 1959. The court's order was adverse to the relatrix following a series of hearings at which voluminous testimony was taken. In the absence of evidence that the respondent at the present time desires to retain custody solely to punish the petitioner, this argument furnishes no reason for making a new order contrary to the 1959 order, which cannot be attacked in the petition before us: *Commonwealth ex rel. Chumard v. Chumard,* 168 Pa. Superior Ct. 188, 191, 77 A. 2d 660, 661 (1951). See also, *Commonwealth ex rel. Craw-*

*ford v. Crawford,* 170 Pa. Superior Ct. 151, 153-154, 84 A. 2d 237, 238 (1951) ; *Commonwealth ex rel. O'Hey v. McCurdy,* 199 Pa. Superior Ct. 22, 184 A. 2d 290 (1962).

In the course of the 1959 hearings, the welfare of the children and the competency of the parties were thoroughly investigated. At the conclusion of these hearings, the children were awarded to the father. Since no appeal was taken from this decision, it is final as to the rights of the parties at the time of its entry, and any change in custody must be based upon a showing of a change in conditions thereafter: See *Commonwealth ex rel. Chumard v. Chumard,* supra.

The relatrix questions the fitness of the home where the children now live. At the 1959 hearing the judge expressed concern about the size of the house of the respondent's parents and the fact that the children would have to sleep in a room with their father or another adult. The relatrix points out that, although the grandmother then said that she intended to move, the children are still there under conditions similar to those existing at the time of the earlier hearing.

The court, however, has found that the children were well cared for during the interval between the 1959 and 1961 hearings, that they seem to be well adjusted, happy and contented, and that their present home is a satisfactory one, in a good neighborhood, and near the school and church which the children attend. Although the adult aunt who sleeps in the room with them at one time suffered from mental illness, in a letter received in evidence in the 1959 hearings the doctor who attended her during the illness stated that she had recovered. There is nothing in the testimony to show any recurrence of her illness.

The trial judge assumed that the relatrix was a fit parent. She noted that the needs of children of tender years ordinarily are best served by their mother and

that they should be committed to her care and custody unless compelling reasons appear to the contrary: *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960). However, compelling reasons may require the mother's right to give way to the best interests of the children: *Commonwealth ex rel. Kudack v. Sabo,* 198 Pa. Superior Ct. 161, 181 A. 2d 921 (1962). Here Judge BROWN found compelling reasons for continuing the custody in the father.

While the mother has been divorced from the father since the 1959 hearings and has now married Sergeant Swanson, in order to marry her, Sergeant Swanson divorced his former wife and left in her custody two minor children whom he is obligated to support. He earns about $400 to $425 per month, but pays rent of $96.90 for his quarters on the base. Mr. Barry earns about $120 per week.

While the petitioner's home is adequate, this alone is not sufficient ground for transferring custody to her in view of the good experience of the children in the home with their father, and the other factors in the case. One of these factors is that the stepfather, the husband of the relatrix, is a career serviceman in the armed forces of the United States, and, although he has been stationed at the base in New Jersey for the past five years, he is subject to transfer at any time to any part of the world.

Judge BROWN also properly notes as an important consideration the fact that the mother's home is beyond the jurisdiction of the court. See *Commonwealth ex rel. Buell v. Buell,* 186 Pa. Superior Ct. 468, 471, 142 A. 2d 338, 340 (1958).

The custody of children should not be lightly interrupted when their welfare might be endangered by irreconcilable differences existing between the parents. As Judge BROWN said in this case: "To uproot them

now and place them in a new and strange environment, subject and liable to removal to other parts of the globe from time to time by reason of their mother's marriage to a member of the Armed Forces, is fraught with grave psychological and physical dangers."

When children have thriven and are well adjusted after having been legally in their father's custody over a considerable period, the tender years doctrine does not carry the same weight as it does when the question comes before the court immediately after the breakup of the family or where there has been no reason earlier to deny custody to the mother. See *Commonwealth ex rel. Batturs v. Batturs,* 162 Pa. Superior Ct. 573, 60 A. 2d 610 (1948).

While it is our duty to examine the evidence in custody cases, we are not free to nullify the fact-finding function of the hearing judge, who can best determine the credibility and the weight to be given to the testimony of the witnesses who appear before him: *Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 169 A. 2d 69 (1961). Our examination of the testimony discloses no reason for reversing the decision of the hearing judge in this case. The evidence justified her conclusion that the children have done well and have been happy in the father's custody for two years. We affirm her conclusion that it would not be for their best interests to disturb their lives by shifting their custody to their mother and stepfather at this time.

Order affirmed.

---

DISSENTING OPINION BY WRIGHT, J.:

It is my view that these two little girls should be with their mother. The father originally obtained custody by subterfuge. The mother promptly filed a habeas corpus petition which was dismissed without ap-

peal. The court's decision was based primarily on the mother's relationship with another man. The mother subsequently obtained a divorce, married the other man, and filed the instant petition. In my opinion, the mother's establishment of this new family relationship, concededly a proper home, justifies the application of our well-settled rule that children of tender years should be in the custody of their mother. Cf. *Commonwealth ex rel. Gervasio v. Gervasio,* 188 Pa. Superior Ct. 95, 145 A. 2d 732. This record does not show any compelling reasons for a departure from the general rule. On the contrary, it discloses that the children sleep with a paternal aunt who suffers from schizophrenia, and has been under the care of a psychiatrist for fourteen years. The father himself has undergone psychiatric treatment and psychological counseling. He is apparently motivated by a desire to punish the mother, rather than to promote the best interests of the children.

WATKINS, J., joins in this dissent.