# Commonwealth ex rel. Manzak v. Manzak

*Jackson M. Sigmon,* for petitioner.

*Leonard M. Cohn,* for respondent.

PALMER, J., May 25, 1964.—This is a habeas corpus proceeding in which the mother, relatrix, seeks to regain custody of her 13-year-old son, James John Manzak, from his father.

The evidence adduced at the hearing may be briefly summarized. Mr. and Mrs. Manzak were divorced in October 1962. They have four living children, of whom James John is the eldest. Following the divorce, the children remained with relatrix until James John voluntarily elected to leave his mother and live with his father and grandfather at the latter's residence in the Borough of Hellertown.

Relatrix resides at 415 Harris Street in that borough. Respondent resides with his father about 10

blocks away. The husband is a mechanic, and at the time of the hearing was unemployed. He is under a court order to pay $30 a week for support of the four children. Relatrix is a licensed beautician and performs her work in the house in which she resides.

The children all go to school at St. Theresa's Parochial School in Hellertown. They regularly attend Sunday School in the same church.

While James John resided with relatrix, he had a room of his own and she prepared his meals and provided for his other material comforts. He now has a room of his own in his grandfather's house and either his grandfather, who was separated from the boy's grandmother, or his father, prepares his meals.

Mr. Manzak is a man of inflammable temper, at least insofar as relatrix is concerned. He had "beaten her up" both before and after the divorce; he has directed vulgar language at her in the presence of the children; on one occasion he turned off the water pressure in her house; on still another occasion he entered the house, tore the doors off the cabinets, punched a hole in the wall, tore the telephone out of the wall, broke down the closet door and broke down the door to her bedroom to get at her. On still another occasion, he wrecked his car in a fit of temper.

But it is also apparent from the testimony that the occasion for these displays of temper was Mr. Manzak's conviction, which is borne out by the testimony, that relatrix was neglecting the children in that frequently, as often as two, three or four times a week, she would leave them at home, uncared for, while she went out in the evening. She frequently would stay out as late as 4 a.m. on these occasions, and at least five times Mr. Manzak complained of this neglect of the children to the police. On other occasions, she would take the children with her to the house of a woman friend, whose daughter would care for the children

while relatrix and her friend went out. Upon her return, the next morning, the children would be wakened and taken back to their own home.

The court interviewed the boy in chambers. He was alert and intelligent, well mannered and forthright in answering the court's questions. The boy stated he had left his mother to go with his father because his mother so frequently left him and the other children alone at night. He said he would rather stay with his father who was "on the strict side, but I expect it".

The statement of the boy and the testimony of the father as to relatrix' late absences from her home is borne out by testimony at the second hearing in this case. At the conclusion of the first hearing, the court entered a temporary order directing custody to remain in the father, but also directing visitation with the mother every Sunday from 9 a.m. to 6 p.m. The first Sunday after this order was entered, when the boy's father attempted to deliver the boy to relatrix shortly after 9 a.m., neither relatrix nor the other children were at home, although the lights in the house were on, indicating she and the children had been away overnight.

The legislature has imposed upon the courts the duty to resolve disputes concerning custody of minor children. Thus, "In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child": Act of June 26, 1895, P. L. 316, sec. 2, 48 PS §92.

Lacking prescience, the exercise of this discretion is always difficult: Commonwealth ex rel. McTighe v.

Lindsay, 156 Pa. Superior Ct. 560, 562. As noted by Fine, J., in Commonwealth ex rel. Children's Aid Society v. Gard, 162 Pa. Superior Ct. 415: "Such a case demands . . . our most careful examination and the exercise of an enlightened judicial discretion in a matter of the most delicate nature, for prosaic rights in chattels or money judgments are not at stake but one wherein the natural and instinctive emotions of love and affection and the ultimate welfare and happiness of the minor are involved".

The overriding and paramount consideration is the permanent welfare and best interests of the child involved: Commonwealth ex rel. Hough v. Hough, 178 Pa. Superior Ct. 485. In determining what is to the best interest of the child, various factors must be taken into consideration such as his age, health and sex, the competency, character and conduct of the contesting parties, the child's preference, the financial or material benefit to him, the effect on him of relinquishment or transfer of custody, and the present possession of the child. "The governing criterion is, in all cases, the welfare and interest of the child. To this the rights of the parents and all other considerations are subordinated, and each case must be viewed in relation to the happiness, training, development and morals of the infant": Hixon's Appeal, 145 Pa. Superior Ct. 33, 35.

It has been held many times to be the policy of the law that custody of children of very tender age should be awarded to the mother: Commonwealth ex rel. Bendrick v. White, 403 Pa. 55. A child may be of tender years until about age 14, although this is not necessarily so: Commonwealth ex rel. Skurat v. Gearhart, 178 Pa. Superior Ct. 245, 249. However, as children grow older, less weight must be given to the tender years doctrine and more weight must be given to the preference of the child. If a child is of sufficient intelligence, its preferences and attachments should be con-

sulted in determining its custody, but even the preference expressed by the child must be based upon good reasons, and the child's maturity and intelligence must be considered.

"The law does not set an age over which the wish of the child is to be followed in a custody case, but it has been said that, in a majority of the cases, the wishes of a child under eight years of age as to its choice of custody have not been considered by the courts. On the other hand, a teenage child's wishes should be considered if they are not based upon a whim or a device to avoid parental discipline": 28 P. L. Encyc. 277-278.

In the case now before us, the "child of tender years" policy comes into conflict with the policy concerning the child's preference and the policy of the law to keep children of a family together. This is not an unusual situation: Commonwealth ex rel. Doberstein v. Doberstein, 201 Pa. Superior Ct. 102.

In exercising our discretion in the instant case, in the light of the guiding principles above noted, we have concluded it is to the best interest of James John Manzak to remain with his father. While there is no suggestion in the record of immoral conduct on the part of relatrix, her repeated action in leaving her children alone and unguarded in her house until all hours of the night tips the scale in favor of awarding custody of this boy to his father. We recognize the father's ungovernable temper, although we also recognize that, under the testimony, this has never been directed toward the children, but solely toward his wife. We do not condone or excuse his conduct, but we do not believe it will adversely affect James John's development. The boy has expressed a firm desire to stay with his father. He is 13 years of age, is intelligent and we cannot say his preference is not based on sound reasons. While not controlling, this expressed preference is a factor which we are entitled to, and have, taken into consideration.

We are of the opinion, therefore, after most serious consideration, that the best interest and permanent welfare of James John Manzak will presently be secured by denying the prayer of relatrix' petition. It should not be necessary to add that custody orders are temporary in character and as conditions change, new orders can be made. This 13-year-old boy needs the love, care and attention of his mother. It is our earnest hope, in the future visits of the child with her, his confidence will be restored and her future conduct will be such as to permit suitable changes in the following order.

### ORDER OF COURT

And now, May 25, 1964, the prayer of the petition for a writ of habeas corpus is denied, and custody of James John Manzak, the minor child of relatrix, shall remain with respondent, John Manzak. Jurisdiction is retained in order that an appropriate order may hereafter be made to secure the right of visitation of the child by his mother, if the same cannot be agreed upon by the parties or their counsel.