Commonwealth ex rel. Keer, Appellant, *v.* Cress.

Argued December 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*L. Friedman,* with him *Herman Bloom,* for appellant.

*Alex J. McCloskey, Jr.,* with him *McCloskey, Desmond & Rockett,* for appellee.

OPINION BY WOODSIDE, J., March 22, 1961:

The parents of the two children involved in this custody case are divorced. While they were married, but separated, the father brought this habeas corpus action against the mother to obtain custody of their daughters, now 10 and 13 years of age. After several hearings, Delaware County Orphans' Court Judge VAN RODEN, specially presiding in the Court of Common Pleas of that county, awarded each of the parents custody of one child, giving visitation rights to the parent not having custody. The arrangement proved unsatisfactory.

After further hearings, the court entered an order on January 11, 1960, awarding custody of the children to the Methodist Home for Children in Philadelphia. No appeal was taken from that order. When children are neglected or dependent, the juvenile court has authority to place them in an institution. We need not now decide whether the court of common pleas has the same authority in a habeas corpus action brought by one parent against the other parent. The court concluded in the adjudication of January 11, 1960, that the mother was not entitled to custody of the children, and the father did not object to the order placing the children in the Methodist Home.

Subsequent to the order of January 11th, the mother having been divorced from the father, remarried and established a home in Winona, New Jersey. Seeking to regain custody of her children, she filed a petition to amend the January 11th order alleging a change of status. See *Commonwealth ex rel. Rogers v. Daven,*

298 Pa. 416, 422, 148 A. 524 (1930). After a hearing, the court dismissed the petition by order of August 23, 1960. An appeal by the mother from that order is now before us.

It is not necessary to detail the mother's conduct which induced the court to enter its order of January 11th placing the children in the Methodist Home. It is sufficient to note that the mother had a child to her present husband before the final decree divorcing her from the appellee was signed, and that her contempt of the court's orders was an indication of unreasonableness, instability, and disrespect for law. There was sufficient evidence to support the court's conclusion that the mother was not entitled to the custody of her children at that time.

The mother now claims to be happily married, to have satisfactory living conditions near a good school, and to have sufficient income and time to properly care for the children. She argues that her misconduct was a temporary lapse from moral standards which does not forever deny her the right to have custody of her children. See *Commonwealth ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855 (1942). She is correct that the issue is her present fitness, and not the nature or extent of her past misconduct. *Commonwealth ex rel. Jacobson v. Jacobson,* 181 Pa. Superior Ct. 369, 376, 377, 124 A. 2d 462 (1956). Although her personal conduct was reprehensible and her attitude to the court exasperating, she is not thereby forever barred from establishing that she has become a proper person to have custody of her children. *Commonwealth ex rel. Batch v. Barber,* 161 Pa. Superior Ct. 82, 54 A. 2d 47 (1947). But, as the present is merely the dividing line between the past and the future, the courts can best determine the appellant's probable future conduct by examining her past conduct.

We recognize that during most of the period this case was before the court below, the mother was pregnant to a man not her husband, had a divorce action pending and faced the loss of custody of her children. This was sufficient to emotionally disturb any mother. But, this situation arose from her own misconduct. It will take time for her to demonstrate that her attitude and conduct during this period were not her normal attitude and conduct.

Appellant's present husband, who expressed a willingness to adopt his step-children, has three children of his own who are with their mother. He apparently was guilty of misconduct with the appellant prior to their marriage. Although the evidence is not too clear, there is some indication that the appellant, even since her remarriage, has not cooperated with the court and the officials at the Methodist Home in developing an adjusted life for the children.

When the children were placed in the Methodist Home they were in serious need of the stabilizing influence it brought to them. They made a good adjustment at the Home. It would be unwise to remove them so soon, and place them into a strange environment out of the state, in a home not yet too firmly established, with a parent not yet proven suitable to have custody of them.

The children's father is supporting them at the Methodist Home. Both parents have rights of visitation. If the parents demonstrate that their association with the children constitutes a good influence, rights of visitation, including the right to have the children in the parents' homes, can be extended by the court below in such manner and to such extent as it believes advisable. Eventually, it may be established to the satisfaction of the court by the general conduct of one or both of the parents, and particularly by their conduct when associating with the children, that a

change in the custody of their children is desirable. A good family home, if one is available, is always preferable to a good institutional home. See *Cochran Appeal*, 394 Pa. 162, 145 A. 2d 857 (1958).

Although the best interests of the children are the primary consideration, we must not ignore the interest and the rights of the father in these children. He is supporting them. He apparently was free from the misconduct of which the mother was guilty. The wife's voluntary acts were the major factor in destroying the home life which would have given these unfortunate girls a more normal childhood.

The record indicates that Judge VAN RODEN gave this case careful, patient and extensive consideration, holding repeated hearings and conferences over a period of nearly two years. He had an unusual opportunity to evaluate the situation, to appraise the parties, and to settle upon a course which gives greatest promise of promoting the best interests of the children. *Commonwealth ex rel. Shroad v. Smith*, 180 Pa. Superior Ct. 445, 450, 119 A. 2d 620 (1956). The burden to establish that he was wrong rests upon the appellant. *Commonwealth ex rel. Hubbell v. Hubbell*, 176 Pa. Superior Ct. 186, 193, 107 A. 2d 388 (1954). She did not meet that burden.

Order affirmed.