Opinion by
 

 Hoffman, J.,
 

 The appeals combined here arise out of an alleged attack on a girl on January 28, 1967. The girl stated that she had been grabbed by five boys, put into a car, and forced to have sexual intercourse with three of them against her will.
 

 As a result of an investigation, the Delaware Coum ty police obtained statements from appellants William Coles and Leon Hopkins on February 5, 1967, and from appellant Roger Freeman on February 6, 1967.
 

 Charges were filed in the Juvenile Court of Delaware County on March 2, 1967, stating that the five appellants took the girl into a car and that appellants William Coles, Moses Coles, and Roger Freeman had sexual intercourse with her against her consent.
 

 On July 19, 1967, appellants appeared in the Juvenile Court of Delaware County on the above charges.
 
 *425
 
 At the conclusion of the hearing, the Juvenile Court adjudged all five appellants delinquent and committed them to Camp Hill.
 

 Appellants Moses Coles, William Coles, and Leon Hopkins filed petitions for Writs of Habeas Corpus on August 9, 1967, and appellants Freeman and Harrison filed petitions for Writs of Habeas Corpus on August 18, 1967. The lower court, sitting as a Court of Common Pleas, held a hearing on the above petitions on September 11, 1967.
 

 At that hearing, counsel for appellants stated that they desired to put on record their reasons in support of the petitions, because the lower court had indicated that the petitions were not self-sustaining. After this hearing had commenced, the court interrupted the taking of testimony, dismissed the petitions, and stated that all appellants were certified to the district attorney for prosecution in the Court of Quarter Sessions. An order to this effect was then entered, and each of the appellants was indicted for rape the same day.
 

 Bills of Indictment
 

 Appellants first contend that the bills of indictment must be quashed.
 

 Under the Act of June 2, 1983, P. L. 1433, §18, 11 P.S. 260, a judge in juvenile court may certify any case involving a child above the age of 14, charged with a crime punishable by imprisonment in a state penitentiary, to the district attorney . . if, in his opinion, the interests of the State require a prosecution of such ease on an indictment, . . .” However, before certification is permitted, our statutory rules and the constitutional standards set forth in
 
 Kent v. United
 
 States, 383 U.S. 541 (1966), must be followed.
 

 In the case at bar, appellants were adjudged delinquent at the July 19, 1967 hearing, and were com
 
 *426
 
 mitted to Camp Hill. Our Supreme Court clearly stated in
 
 Holmes Appeal,
 
 379 Pa. 599, 109 A. 2d 523 (1954), that certification cannot be made “. . . after the Juvenile Court had made an adjudication of delinquency. . . .” at 605. These appellants had already been adjudged delinquent and no order had been entered vacating the commitment orders. The lower court, therefore, had no authority to certify the case to the district attorney at a later date.
 

 Moreover, the lower court judge at the time of the certification orders, was sitting as a judge of the Court of Common Pleas to hear oral arguments on the petitions for Writ of Habeas Corpus. Since the above Act provides that only a judge in juvenile court may certify a case to the district attorney for further prosecution, it was improper for the judge in the instant case, sitting as a judge of the Court of Common Pleas, to so certify. The mere fact that the same judge sat in both courts is irrelevant. In many smaller counties, it is true, judges do sit in several courts by donning various hats. This fact, however, does not eliminate the distinction between the courts.
 

 The United States Supreme Court decision in
 
 Kent v. United States,
 
 supra, also mandates that we quash the indictments in this case.
 
 Kent
 
 involved the cer tification of a juvenile in the District of Columbia who was charged with rape. Kent’s counsel asked for a hearing on the court’s action, seeking to establish that Kent required psychiatric care and could be rehabilitated. The judge, under a statute
 
 [1]
 
 similar to our Act, held no hearing prior to certifying the case.
 

 
 *427
 
 Both the statute in the District of Columbia and our Act permit the Juvenile Court to waive jurisdiction, and allow the child to be held for trial under adult procedures. Neither statute, however, delineates standards governing the Juvenile Court’s discretion as to waiver.
 

 In
 
 Kent,
 
 the Court said: “. . .We conclude, that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court’s decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.” at 557. In other words, the Court requires that there be a hearing held on the issue of certification, effective assistance of counsel, and an opinion by the juvenile court judge as to the reasons for certification.
 

 In the case at bar, no hearing was held on the issue of certification and appellants were not effectively represented at such a hearing. In the midst of a hearing on the habeas corpus petitions, the court certified appellants to the district attorney. No prior notice was given that the hearing would involve certification. Nor can it be argued that counsel was present and competent to protect appellants’ rights, because counsel had no opportunity to confront the issue of certification at any time. “Appointment of counsel without affording an opportunity for hearing on a ‘critically important’ decision is tantamount to a denial of counsel.”
 
 Kent v. United States,
 
 supra at 561.
 

 The bills of indictments must also be quashed because Rule 203 of the Rules of Criminal Procedure
 
 *428
 
 was not followed. The rule provides that a defendant held for court may challenge the array of the grand jury or an individual juror. Section (c) of that Eule specifically provides:
 

 “(c) A hill of indictment shall not be submitted to a grand jury for action until 10 days after a defendant is held for court unless he consents to an earlier submission and the Commonwealth agrees thereto, or the court, for cause, permits an earlier submission.”
 

 This rule was promulgated in light of
 
 Commonwealth v. Dessus,
 
 423 Pa. 177, 224 A. 2d 188 (1966), wherein our Supreme Court held that a defendant has a constitutional right to challenge the array of. the grand jury or an individual grand juror within a reasonable time. In Dessus, the defendant was denied an opportunity to adequately make his challenge because he was indicted by the grand jury on the same day that he was held for trial. See also
 
 Commonwealth v. Collemacine,
 
 429 Pa. 24, 239 A. 2d 296 (1968). The ten day period was incorporated in the amended rule to allow defendant a reasonable time within which to make his challenge.
 

 In the case at bar, appellants were certified to the Court of Quarter Sessions on September 11, 1967, and, on the same day, were indicted by a grand jury. Since appellants had been under the jurisdiction of the Juvenile Court until the certification order was entered, they were not “held for court” until September 11. Therefore, it was improper under
 
 Dessus
 
 and Eule 203 to indict appellants on that day.
 

 We therefore hold, for the above reasons, that the certification of appellants to the district attorney, coupled with the obtaining of the bills of indictment, was improperly executed. Accordingly, the bills of indictment against appellants are hereby quashed.
 

 Ordinarily, we would not be required to proceed further and consider the prior juvenile proceedings. In
 
 *429
 
 this case, however, the order in the Juvenile Court was never vacated and, in the opinion of the Commonwealth, is still effective. For this reason we must consider the juvenile court proceedings themselves.
 

 Adjudication of Delinquency-
 

 Appellants contend that the Juvenile Court hearing held on July 19, 1967, did not conform to the due process standards set forth in
 
 In re Gault,
 
 387 U.S. 1 (1967).
 

 The
 
 Gault
 
 decision was handed down by the United States Supreme Court on May 15, 1967, only two months prior to the hearing in the instant case. That landmark case set forth several procedural requirements which must be met in juvenile proceedings, and vastly changed the juvenile law in almost every state. Consequently, it is not surprising that the lower court and counsel for appellants William and Moses Coles were not totally familiar with the changes in juvenile court procedure required by
 
 Gault.
 
 Now, with hindsight of a year’s experience, we can better reflect on the import of that decision and apply its mandated standards to the instant case.
 

 1.
 
 Notice of Charges
 

 The initial due process requirement of
 
 Gault
 
 is that notice of the charges be given to the juvenile and to his parents. The notice must be in writing and must contain the specific charge or allegations of fact upon which the proceeding is to be based.
 
 In re Gault,
 
 supra, at 33.
 

 In
 
 Gault,
 
 the petition filed with the court did not allege the charges with which the minor was charged or the facts upon which the charge was to be based. The minor’s parents were informed orally of the charges against their son and that a hearing would be held.
 
 *430
 
 The only written notification to Gault’s parents was a note stating that further hearings were to he held.
 

 Here, although the facts alleged in the petition did form a basis for a charge, this petition was never served upon any of the appellants or their parents.
 
 [2]
 

 The only notice which appeared of record was that about which appellant Freeman testified at the September 11 hearing. He said that he was advised by phone by his cousin, Leon Hopkins, also an appellant, to report to the police station. He testified that he had no idea what he was being charged with; nor does the record indicate that his parents were informed of the charges against him, or accompanied him to the police station. Freeman further testified that after the initial questioning, a detective told Freeman’s mother that her son was to report to the Juvenile Court for more questioning. Again, there is nothing in the record to indicate that Freeman or his parents were apprised of the nature of the charges against him. (NT 8-9).
 

 Freeman also testified that his mother was told by a detective that she was to have her son report to the Juvenile Court on July 19, 1967 for a hearing. The record clearly indicates that appellant Freeman and his parents were at no time told of the charges against him. Freeman appeared at the hearing, therefore, without counsel, without parents, and without any procedural rights to which he was entitled to under
 
 Gault.
 

 The record before us lacks any reference to the manner of notice given the other four appellants. At best, we can draw an inference from appellant Free
 
 *431
 
 man’s testimony that they were informed of the Juvenile Court’s proceedings in a similar manner. In any event, we cannot surmise from a silent record that the rigid notification requirements of
 
 Gault
 
 have been met.
 

 2.
 
 Confrontation of Witnesses and- Sworn Testimony
 

 Justice Fortas, in Gault, emphasized that “From the inception of the juvenile court system, wide differences have been tolerated — indeed insisted upon — between the procedural rights accorded to adults and those of juveniles.” at 14. He set forth in great detail that the informality of juvenile proceedings, in many instances has not adequately served the cause of juvenile justice. The Court, therefore, deemed it appropriate as well as necessary to require reforms in the adjudication of delinquency of juveniles.
 

 The Court specifically stated: “As we said in Kent v. United States, 383 U.S. 541, 554 (1966), with respect to waiver proceedings, ‘there is no place in our system of law for reaching a result of such tremendous consequences without ceremony. . . .’ We now hold that, absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of
 
 sworn testimony
 
 subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements.” at 57. [Emphasis added.]
 

 Under our Act of March 21, 1772, 1 Sm. L. 383, §1, as amended, April 3, 1895, P. L. 32, §1, 28 P.S, §251, “All and all manner of crimes, offenses, matters, causes and things whatsoever to be inquired of, heard, tried and determined or done or performed by virtue of any law of this commonwealth, or otherwise, shall and may be inquired of, heard, tried and determined by . . . witnesses . . . either by taking the solemn affirmation or any oath in the usual or common form.
 
 *432
 
 . . .” It has long been held that failure to administer this oath and the taking of evidence in an adult criminal trial is reversible error.
 
 Commonwealth v. Capero,
 
 35 Pa. Superior Ct. 392 (1908). While this statute has never been applied to juvenile proceedings, the
 
 Gault
 
 decision mandates that a similar procedure be provided so that the juvenile may be confronted by witnesses subject to oath and the penalties for perjury.
 

 Closely allied with this more than ritualistic formalism of administration of oaths is the right of confrontation and cross-examination of witnesses. The import of
 
 Gault
 
 is that the rules of evidence must basically be followed at the adjudicatory hearing, and that hearsay will not be permitted unless it fits within an exception to the rule. “Insistence that the charges be substantiated by valid and relevant evidence will also bring about for the first time the possibility of asserting that there is a variance between the pleading and proof in the case, a point long established in regular criminal procedure but for practical purposes unknown in delinquency proceedings.” James George, Jr., Gault and The Juvenile Court Revolution, (1968) at 54. Without an administration of an oath to a witness, the taking of testimony is meaningless.
 

 In the instant case, the record discloses the informal procedures utilized by some Juvenile Courts prior to the
 
 Gault
 
 decision. Here, unsworn testimony of all witnesses, namely, a police officer, probation officers, the complaining witness and her mother, and the appellants themselves, was taken.
 

 Thus, the constitutional right to confront witnesses, coupled with the necessity of a formal administration of an oath, requires a degree of formality not previously followed by many of our Juvenile Courts. In this case the elements of due process set forth in
 
 Gault
 
 
 *433
 
 have not been followed, and appellants’ constitutional rights, therefore, have been violated.
 

 3.
 
 Right to Counsel
 

 The Court in
 
 Gault
 
 stated: “We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile’s freedom is curtailed, the child and his parents must be notified of the child’s right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.” at 41.
 

 In the instant ease, appellants Hopkins, Harrison and Freeman were not represented by counsel at the delinquency hearing on July 19, 1967.
 
 [3]
 
 Thus, the hearing as to these appellants was violative of their constitutional rights.
 

 Nor can it be stated that appellants intelligently waived their right to assistance of counsel. At one point, in the July 19, 1967 hearing, the Juvenile Court asked a probation officer “. . . have all the defendants involved here been advised of their constitutional rights?” She replied that they had been so advised. Yet, she only interviewed two of the five appellants in this case, and she did not explain how she knew that the others had been warned. Even more crucial is the fact that there is nothing in the record to show that appellants were told that they had a right to counsel, and if they could not afford one, the court would appoint one. We should be loathe to find an intelligent waiver of a right required by
 
 Gault
 
 where the record is barren of any notation that appellants were adequately apprised of such right. See
 
 Commonwealth v.
 
 Wilson, 430 Pa. 1, 241 A. 2d 760 (1968).
 

 
 *434
 
 In summary, it is our opinion that the juvenile hearing of July 19, 1967, violated the constitutional rights of the appellants.
 
 In re Gault,
 
 supra. Since appellants Hopkins, Harrison, and Freeman were without counsel at the July 19, 1967 hearing, the due process requirement of the right to assistance of counsel, as noted above, was not complied with nor waived. Furthermore, the hearing was infirm as to all appellants because they did not receive adequate notice required by
 
 Gault,
 
 and the requisite procedural formality mandated by
 
 Gault,
 
 such as the swearing of witnesses and the right of confrontation, was not followed.
 
 [1]
 

 For the reasons stated above, the bills of indictment obtained against appellants are hereby quashed, the commitment orders of July 19, 1967, of the Juvenile Court of Delaware County are vacated, and the case is remanded for a new hearing in accordance with this decision and
 
 In re Gault,
 
 supra.
 

 [1]
 

 See D.C. Code §11-914 (1961), now §11-1553 (Supp. IV, 1967) which provides:
 

 “If a child, sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may,
 
 *427
 
 after full Investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; . . .”
 

 [2]
 

 Such service was not required under our Juvenile Court Law, Act of June 2, 1933, P. L. 1433, §4, as amended, P. L. 394, §1, 11 P.S. 246. In certain instances, however, our Courts have held that it may be an abuse of discretion for the juvenile court to enter into a hearing without giving a person having custody of the child notice and an opportunity to be heard.
 
 Holmes Appeal,
 
 supra.
 

 [3]
 

 Appellants William Coles and Moses Coles were represented by counsel at this hearing.