423 A.2d 1229

**In re CUSTODY of Shari L. FRANK and Kathy A. Frank, minor children.**

**Appeal of Wanda Lee FRANK.**

Superior Court of Pennsylvania.

Argued March 21, 1980.

Filed Dec. 19, 1980.

Judith Calkin, Carlisle, for appellant.

Robert Frank, Pittsburgh, appellee, in pro. per.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM and HOFFMAN, JJ.

SPAETH, Judge:

This is an appeal from an order granting custody of two children to their mother "subject to temporary supervision by Cumberland County Children's Services." The appeal is by the mother.[1] She contends that since the action arises on her petition for custody of her children, and not under the Juvenile Act,[2] the lower court had no power to make its grant of custody subject to such temporary supervision.

Appellant, Wanda Lee Frank, and Robert E. Frank, Jr., were married on February 17, 1962. They had five children: Robert E., born October 1, 1962; Thomas J., born August 15, 1963; Charles, born June 4, 1965; Shari L., born August 15, 1966; and Kathy A., born April 19, 1968.

In June 1976, appellant and Robert Frank separated. Charles had been placed for adoption, in 1967, but the other four children remained with their father. Appellant petitioned the lower court for custody of the children. After a hearing in July 1976, the court gave custody of Robert and Thomas to their father. Shari and Kathy were not included in this custody order, apparently because they were by then living with their paternal grandparents in Arizona.

1. This appeal was originally argued before a panel of this court, but it was then consolidated with the appeal in Hemenway v. Hemenway, 65 October Term 1979, J. 379/80, and both cases were argued before the court *en banc.*

2. Act of Dec. 6, 1972, P.L. 1464, No. 333, § 1 et seq., 11 P.S. §§ 50–101 *et seq.*, repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1460], effective June 27, 1978, and substantially reenacted as 42 Pa.C.S.A. §§ 6301 *et seq.* Since the lower court's order was issued prior to June 27, 1978, our primary references below will be to the former Juvenile Act. However, since the Act has been substantially reenacted, we shall add, in brackets, references to the current Act.

In November 1976, appellant and Robert Frank were divorced. Sometime in May 1977, Shari and Kathy returned from their grandparents' home and began living once again with their father and brothers, Robert and Thomas. In November 1977, Shari and Kathy moved with their father and two brothers to Virginia. In January 1978, appellant obtained custody of Shari and Kathy, with their father's consent, and returned with them to Cumberland County. Robert and Thomas continued to live with their father in Virginia.

On March 8, 1978, appellant petitioned the lower court for an order confirming her custody of Shari and Kathy. The girls' father did not oppose this petition. A hearing was held on April 5, 1978, at which appellant was represented by a law student who appeared pursuant to Supreme Court Rule 11 [now Bar Admission Rules 321–22]. At the end of the hearing, the lower court granted custody of Shari and Kathy to appellant, subject to temporary supervision by Children's Services. The lower court made no findings of fact, nor did it otherwise explain its order. After this appeal was taken, the lower court filed an opinion, which reads in its entirety as follows:

Having been advised that an appeal has been taken in the above matter, this memorandum is prepared pursuant to Pa.R.A.P. 1925.

The petitioner's application for custody was unopposed and the sole basis of the appeal is that the court directed that temporary supervision of the children be exercised by the Cumberland County Children's Services. The first notice that this provision was offensive to the petitioner appeared when the notice of appeal was received. A review of the record of the testimony taken at the time of the hearing fails to disclose any objection to this provision in the order and, therefore, serious question arises as to whether there is any basis for the appeal.

The situation involving the Franks has been before this court on more than one occasion. It is because of the stormy relationship that has existed between the two

parents and the allegations of improper care given to the children that the court directed Cumberland County Children's Services to keep in touch with the situation. At the time of the order, and now, we feel that the welfare of the children requires that the Cumberland County Children's Services should keep in touch with the situation.

–1–

Before we may consider this appeal on its merits, we must examine the lower court's suggestion that because appellant's attorney failed to object to the imposition of temporary supervision by Children's Services, "serious question arises as to whether there is any basis for the appeal." We find no merit in this suggestion.

 When an action in assumpsit is tried by a judge sitting without a jury, a party who objects to the judge's decision must file exceptions, and "[m]atters not covered by exceptions are deemed waived...." Pa.R.Civ.P. 1038(d). This procedure is also applicable to actions in trespass, Pa.R.Civ.P. 1048, and we have held that the failure to file exceptions will preclude a party from challenging the lower court's decision. *Matczak v. Matczak*, 275 Pa.Super. 164, 418 A.2d 663 (1980); *Gibson v. Miller*, 265 Pa.Super. 597, 402 A.2d 1033 (1979); *Canada Dry Bottling Co. v. Mertz*, 264 Pa.Super. 480, 400 A.2d 186 (1979); *Blake v. Mayo Nurs. & Convales. Homes*, 245 Pa.Super. 274, 369 A.2d 400 (1976). However, exceptions are not required in a child custody case; the order awarding custody is a final order, and, therefore, is the order from which any appeal to this court is to be taken, without the necessity of any intervening proceedings, such as exceptions or other review by the lower court.

Furthermore, we have held that the concept of waiver, invoked by the lower court, is inappropriate in a child custody case. In *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976), one issue involved the hearing judge's failure to order the child's statement transcribed. In considering this issue, we said:

Counsel for the father has argued in his brief that the error of the hearing judge in not ordering a transcript has been waived because counsel for the mother did not complain of it at the time, "[when it] could have been eradicated." (Brief for Appellee, at 11.) This argument mistakes the nature of a custody hearing. The sole purpose of the hearing is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 107–08, 296 A.2d 625, 627 (1972) ("the best interest of the child is paramount"); *Commonwealth ex rel. Holschuh v. Holland-Moritz, supra,* 448 Pa. at 444, 292 A.2d at 383 ("all other considerations are subordinate"). It is David's future we are determining; he had a right to expect that the hearing judge would follow prescribed procedures. That right was not óne that the hearing judge could ignore, or that either parent could waive. *Cf. Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974) (allocatur refused). 240 Pa.Super. at 389–90, 361 A.2d at 311.

*See also Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979).

■ Finally, on the record here we should be particularly unwilling to find waiver. As mentioned above, appellant was represented at the hearing before the lower court by a law student. The student attorney called appellant to the stand and questioned her briefly; the entire interrogation comprises three and a half pages of the record. Then the lower court interrupted the student attorney's examination of appellant, and itself assumed the examination; the court's interrogation of appellant comprises two pages of the record. After completing its examination of appellant, the court began to interrogate Patricia Gillingham. Ms. Gillingham was a representative of Cumberland County Children's Services. She was present, so far as we can tell, without any prior notice to either appellant or her student attorney. The court interrogated her briefly about Children's Services' past involvement with the Frank children. When the student attorney objected on the ground that Ms. Gillingham

had not been sworn, the court stated: "Well, don't make any objection to it, I'm going to give the children to her [appellant]." N.T. at 8. The court then completed its examination of Ms. Gillingham, and without further addressing itself to the student attorney, entered the order that is the subject of this appeal. Thus, during a short hearing, the court twice indicated that appellant's student attorney should keep still and let the court conduct the proceeding as it thought best: first, when the court stopped the student attorney's interrogation of her client and proceeded to interrogate the client itself; and second, when the court told the student attorney not to make (an entirely proper)[3] objection to its interrogation of Ms. Gillingham. It is evident that counsel, inexperienced in the extreme, was overwhelmed, if not intimidated, by the court. In these circumstances, to penalize appellant, by holding that her right to challenge an order affecting an interest as precious as a mother's interest in her children had been lost because of her attorney's failure to object, would be most inappropriate.

–2–

As will be recalled from the statement of the history of the case, the lower court had before it appellant's second petition for custody. Appellant's first petition was filed in 1976, and was for custody of all four of her children. The lower court denied that petition; custody of the two boys was awarded to their father, and the two girls were permitted to continue to live with their paternal grandparents, and later they went to live with their father. The present case arises on appellant's second petition, filed in 1978; by it appellant seeks custody only of the two girls; apparently she and the children's father have agreed that she may have custody of the girls, while he is to have custody of the boys.

3. *See* Act of March 21, 1772, 1 Sm.L. 387, § 1, *as amended*, 28 P.S. § 251, *repealed and recodified*, as 42 Pa.C.S.A. § 5901(a) (1979 Pamphlet); *Ellicott v. Pearl*, 35 U.S. 412, 434, 9 L.Ed. 475 (STORY, J.); *Freeman Appeal*, 212 Pa.Super. 422, 242 A.2d 903 (1968); *Commonwealth v. Capero*, 35 Pa.Super. 392 (1908); 6 Wigmore, Evidence § 1824 at 408 (Chadbourn rev. 1976).

Therefore, stated generally, the issue before the lower court was as follows: In 1976, on the mother's petition, the court had resolved a dispute between the mother and father regarding the custody of their four children so as to deny the mother custody of any of the children. Had circumstances so changed that, in 1978, on the mother's second petition, the court should grant the mother custody of two of the children?

—a—

In resolving the issue thus presented, the lower court was governed, as we are governed, by the Act of June 26, 1895, P.L. 316, § 2, 48 P.S. § 92, which provides as follows:

In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child.

The obligation to apply the standard thus set forth has frequently been recognized. *See, e. g., Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980) ("in every custody dispute the fundamental issue is the best interest of the child"); *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Lewis v. Lewis, supra; Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979); *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). In deciding what is in the best interest of the child, the court may not resort to presumption or otherwise shift the burden of proof; rather, the burden of proof is shared equally by both parents, and the court must award custody as the evidence dictates. *Ellerbe v. Hooks, supra; Lewis v. Lewis, supra; In re Custody of Hernandez, supra.*

—b—

It appears to have been the lower court's opinion that the Act of June 26, 1895, *supra,* authorized it to require appel-

lant to submit, in her care and custody of Shari and Kathy, to the supervision of Children's Services. Thus in explaining its order imposing supervision, the court states in its opinion that "we feel that *the welfare of the children requires* that the Cumberland County Children's Services should keep in touch with the situation." (Emphasis added.) This statement reflects a fundamental misconception of child custody law.

The interest of a parent in the care and custody of his or her children is one of the strongest interests recognized by the law. *Ellerbe v. Hooks, supra; In re Custody of Hernandez, supra; In the Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *In re Rinker*, 180 Pa.Super. 143, 117 A.2d 780 (1955). It comes before the courts "with a momentum of respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." *Kovacs v. Cooper*, 336 U.S. 77, 95, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (FRANKFURTER, J., concurring). This momentum derives from "[o]ur determination . . . that the blood relationship of parenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and that without some showing of harm, the courts should not interfere with that arrangement." *Ellerbe v. Hooks, supra*, 490 Pa. at 369, 416 A.2d at 514–15 (citing and quoting from *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") The question therefore arises, by what process, and on what proof, must the requisite "showing of harm" be made?

This question presents "one of the most difficult problems in the law." *In the Interest of LaRue, supra*, 244 Pa.Super. at 225, 366 A.2d at 1274:

On the one hand, the State has an interest in requiring parents to respect the duty they owe their children. [Citation omitted.] On the other hand, in requiring that re-

spect, the State must be cautious not to intrude upon the family to the point of weakening it as one of our most important institutions.

The way to resolve this problem is to impose restraints upon the State, not to prevent its officials from reacting to a child's plight, but to prevent them from overreacting. No doubt one official will be sensitive and wise, but another will be a self-righteous prig; and that is the one we must guard against, for backed by the State, his power may overwhelm any parent.

*Id.*, 244 Pa.Super. at 225–26, 366 A.2d at 1274–75.

To achieve the proper balance between a parent and the State, the Legislature has enacted[4] a comprehensive statute, the Juvenile Act, 11 P.S. §§ 50–101 *et seq.*,[5] which specifies the process that must be followed, and the proof that must be forthcoming, before a court may direct an agency of the State to interfere with a parent's right to the care and custody of his or her children. Here, as will appear, the required process was not followed, and the required proof was not forthcoming.

—c—

Proceedings under the Juvenile Act are commenced by the filing of a petition, 11 P.S. § 50–302(3) [42 Pa.C.S.A. § 6321(a)(3)], which "may be brought by any person including a law enforcement officer," and which must include "[t]he facts which bring the child within the jurisdiction of the court and [the] act." 11 P.S. § 50–314 [42 Pa.C.S.A.

4. And re-enacted. *See* footnote 2, *supra.*

5. In addition to the Juvenile Act, two other statutes govern State intervention in parents' care of their children. The Child Protective Services Law, Act of Nov. 26, 1975, P.L. 438, No. 124, 11 P.S. §§ 2201 *et seq.*, deals with the very serious problem of child abuse, defined as "serious physical or mental injury." 11 P.S. § 2203. It contains, among other provisions, procedures for reporting and investigating the abuse of children and for taking such children into protective custody. If a child is taken into protective custody, the procedures of the Juvenile Act are to be followed. 11 P.S. § 2208. The Adoption Act, Act of July 24, 1970, P.L. 620, No. 208, 1 P.S. §§ 101 *et seq.*, provides for the involuntary termination of parental rights in very limited situations. 1 P.S. § 311.

§ 6334]. A child may not be brought within the jurisdiction of the court unless it is either a "delinquent or dependent" child. 11 P.S. § 50–103(1) [42 Pa.C.S.A. § 6303(a)(1)]. As we are not here concerned with a delinquent child, we shall refer only to the provisions of the Act concerning a dependent child. A dependent child is a child who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." 11 P.S. § 50–102(4)(i) [42 Pa.C.S.A. § 6302].

After the requisite petition has been filed and the court has fixed a hearing date, a summons, accompanied by a copy of the petition, must be issued "to the parents, guardian, or other custodian, a guardian ad litem, and any other persons as appear to the court to be proper or necessary parties to the proceeding, requiring them to appear before the court . . . to answer the allegations of the petition." 11 P.S. § 50–315 [42 Pa.C.S.A. § 6335(a)]. All parties to the proceeding are entitled to counsel, and, if they are unable to employ counsel, to court-provided counsel. 11 P.S. § 50–317 [42 Pa.C.S.A. § 6337]. "Counsel must be provided for a child unless his parent, guardian, or custodian is present in court and affirmatively waive it. However, the parent, guardian, or custodian may not waive counsel for a child when their interest may be in conflict with the interest or interests of the child." 11 P.S. § 50–317 [42 Pa.C.S.A. § 6337]. At the hearing, "[a] party is entitled to the opportunity to introduce evidence and otherwise be heard in his own behalf and to cross-examine witnesses." 11 P.S. § 50–318 [42 Pa.C.S.A. § 6338]. The hearing "shall be conducted by the court without jury, in an informal but orderly manner, and separate from other proceedings not included" in the jurisdiction of the Juvenile Act. 11 P.S. § 50–316 [42 Pa.C.S.A. § 6336(a)]. After hearing the evidence,

the court shall make and file its findings as to whether the child is a dependent child. . . . If the court finds that the child is not a dependent child . . . it shall dismiss the petition and order the child discharged from custody or other restriction ordered in the proceeding.

11 P.S. § 50–320(a) [42 Pa.C.S.A. § 6341(a)].

Thus, the court may not even consider making any disposition until and unless it has found that the child is "dependent." *In re Jackson*, 267 Pa.Super. 428, 406 A.2d 1116 (1979); *In the Interest of LaRue, supra.*

In the present case, none of these procedural requirements was satisfied. No doubt Children's Services *might* have filed a petition alleging that Shari and Kathy were dependent children, but it did not. Instead, Ms. Gillingham, representing Children's Services, simply appeared at the hearing. No petition was filed; no summons accompanied by a copy of a petition was issued on appellant; no notice of any sort was given to either appellant or her student attorney that at the hearing anyone would make any claim that her children were dependent children whose care and custody should be under the supervision of Children's Services, or of any other agency of the State. Finally, the lower court made no findings at the hearing, nor did it file any findings afterwards, that either Shari or Kathy was a dependent child. (This failure will be further discussed below.) Instead the court proceeded without any findings directly to its order of disposition, providing that appellant's care and custody of Shari and Kathy was subject to temporary supervision by Children's Services.

–d–

 If a proper petition had been filed and proper notice given, and if the lower court had made findings that Shari and Kathy were dependent children, then the court would have been entitled to select from a wide range of dispositions, including a disposition that would permit Shari and Kathy to remain with appellant as their mother, subject, however, to temporary supervision by Children's Services. Thus the Juvenile Act provides that

(a) If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:

(1) *Permit the child to remain with his parents,* guardian, or other custodian, *subject to* conditions and limitations as the court prescribes, including *supervision as directed by the court* for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following: (i) any individual in or outside Pennsylvania who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child; (ii) an agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child; or (iii) a public agency authorized by law to receive and provide care for the child.

11 P.S. § 50–321 [42 Pa.C.S.A. § 6351(a)] (emphasis added). However, under the Juvenile Act the lower court was not entitled to make any finding that Shari and Kathy were dependent children, and therefore was not entitled to file any disposition order providing for their supervision, *unless* "clear and convincing" proof of dependency was forthcoming. 11 P.S. § 50–320(c) [42 Pa.C.S.A. § 6341(c)]. Under the Act it is not enough for a court to be of the opinion that supervision by an agency of the State will be in the children's best interest—or, as the lower court in the present case put it, "that the welfare of the children requires" the supervision. Much more must be shown: "clear and convincing" proof that the children are "dependent." *In the Interest of LaRue, supra; In re Rinker, supra.* Thus we see that the Legislature has sought to achieve the proper balance between a parent and the State by requiring, not only that certain procedures be followed, but further, that a specifically high quality of proof be forthcoming. Here, the proof that was forthcoming did not begin to achieve this high quality.

At the hearing, appellant testified that Shari and Kathy were living with her with the consent of their father, her former husband; that she had been self-employed in a janitorial service for a year; and that she was financially

and physically able to care for her daughters. She also testified that she had made special educational and financial arrangements for Kathy, who is mentally retarded. N.T. at 4–8. After appellant's testimony, the lower court, as has been mentioned, briefly interrogated Ms. Gillingham of Cumberland County Children's Services, and then granted appellant custody of the two children, subject to temporary supervision by Children's Services. The transcript of this portion of the hearing reads as follows:

THE COURT: Are you from Children's Services?

MS. GILLINGHAM: Yes, sir.

THE COURT: Have you been in this case at all since January?

MS. GILLINGHAM: Our involvement was in '76, we were to supervise visitation of the two boys. If I may I'd like to bring it to your attention that these two girls, Kathy and Shari, were in our care and custody, Kathy in particular was admitted to our care and custody on May 4th, 1970 and was released on December 20th, 1971, this was on the basis of neglect and dependency.

STUDENT ATTORNEY: Your Honor, I would object to this, this person is not under oath.

THE COURT: Well, don't make any objection to it, I'm going to give the children to her.

THE COURT: Well, you haven't been involved actually with the custody of the children since '72. Is that right?

MS. GILLINGHAM: Yes, no, we have not.

THE COURT: Well, I've had a communication from Mr. Frank in which he indicates that he is not opposing it, and so we'll enter an order placing custody of the two girls with Mrs. Frank subject to your supervision. If you don't care for them somebody will be looking into the situation.

APPELLANT: Believe me, Judge Shughart, I care for them very much.

THE COURT: I don't question that you care for them, what I meant by caring for them I meant properly maintaining.

APPELLANT: I thought that's what you meant.

N.T. at 8–9.

The lower court received no testimony from Ms. Gillingham on the current state of appellant's care for her two daughters, Ms. Gillingham's sole statement being, as just noted, that her agency had had the care and custody of Kathy in 1970 and 1971, over six years before the hearing.

Given this record, it must be said, not only was there not clear and convincing evidence that either Shari or Kathy was a dependent child, as required by the Juvenile Act, 11 P.S. § 50–320(c) [42 Pa.C.S.A. § 6341(c)], there was no evidence at all. It is true that appellant testified that Kathy was mentally retarded, but she also testified that she had made special educational and financial arrangements for her special needs. No evidence was offered to the contrary, and no one has suggested that supervision by an agency of the State is warranted simply because a child is mentally retarded, or that all retarded children are, simply by reason of their condition, dependent children.

 In its opinion the lower court gave as its reasons for its decision the following:

> The situation involving the Franks has been before this court on more than one occasion. It is because of the stormy relationship that has existed between the two parents and the allegations of improper care given to the children that the court directed Cumberland County Children's Services to keep in touch with the situation. At the time of the order, and now, we feel that the Cumberland County Children's Services should keep in touch with the situation.

This statement cannot qualify as a finding that the children were dependent, i. e., were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [their] physical, mental or emotional health, or morals." 11 P.S. § 50–102(4)(i) [42 Pa.C.S.A. § 6302]. The court had before it no evidence of "improper care." Nor does any basis appear for the court's statement that "allegations of improper care" had been

made; no such allegations are of record. As discussed above, Ms. Gillingham merely said that one of appellant's two daughters had been in the care and custody of Children's Services some six years previously. It is settled law that a parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time. *See e. g., In re Leskovich*, 253 Pa.Super. 349, 385 A.2d 373 (1978); *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973); *Commonwealth ex rel. Jacobson v. Jacobson*, 181 Pa.Super. 369, 124 A.2d 462 (1956). Furthermore, the court's statement that appellant's relationship with her former husband was "stormy" is without support in the record, which only shows that appellant and her husband were divorced in November 1976. While it might be inferred from appellant's divorce that she has experienced marital difficulties, it cannot be inferred that her difficulties were "stormier" than the difficulties experienced by other divorced persons. We assume, given the lower court's earlier proceeding in 1976, when appellant filed her first petition for custody, that facts not of record do exist that would confirm the court's statement that a "stormy relationship . . . has existed between the two parents." However, we may not assume, for nothing in the record would support the assumption, that the stormy relationship still exists, or, if it does, that it poses any threat to the welfare of Shari and Kathy. It was the lower court's obligation to support its conclusions "by specific findings of fact and a full discussion of the evidence." *In the Interest of LaRue, supra*, 244 Pa.Super. at 229, 366 A.2d at 1276. We may not uphold a court's order on the basis of off-the-record facts. *See e. g., Commonwealth ex rel. Holschuch v. Holland-Moritz, supra; Gunter v. Gunter, supra.*

—c—

Nothing that has been said above should be interpreted as suggesting that in a custody case a court may not inquire into the circumstances of a parent's home and his or her ability to care for the child. As part of its obligation to

make a comprehensive and penetrating inquiry, the lower court may have to develop the record itself. *Lewis v. Lewis, supra.* Thus, it may order that independent examinations of the parent's home be made by social welfare agencies. *See Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978).

Here, for example, the lower court would have been entitled to instruct Cumberland County Children's Services to inquire into and to report whether appellant was able to care for Shari and Kathy. However, the power of the court to order home visits by social workers while the action is pending, in order for the court to have complete information on which to base its decision, must be distinguished from the court's lack of power to condition its custody decision, once made, on continuing intervention by a social welfare agency. As discussed above, the Legislature has recognized that such continuing intervention may be warranted, and has therefore given the court the power to impose it, but only if the requirements of the Juvenile Act are satisfied. Again with reference to the present case: Having received appellant's petition for custody, the lower court might have instructed Children's Services to inquire into appellant's care of Shari and Kathy. The resulting report might have been that in the opinion of Children's Services the children were not receiving proper care. In that event, Children's Services could—and should—have filed a petition under the Juvenile Act, alleging that Shari and Kathy were dependent children. The proceedings contemplated by the Act, which we have described above in summarizing the Act, would then ensue. If proper proof were forthcoming, the court would then be entitled to select, as the evidence dictated, from a wide range of dispositions, including ordering the continuing supervision of Children's Services.

We offer this illustration of how an action—a petition for custody—initially governed by the Act of June 26, 1895, *supra,* 48 P.S. § 92, may turn into an action—a petition alleging dependency—governed by the Juvenile Act, so that it may be clear beyond possible misunderstanding that the

courts have the power to protect a child. The point that must be insisted upon is that the power be exercised with due respect to the parent's right to raise the child.

In this regard, it may be noted that earlier decisions of this court involving conditions placed on parents' care of their children have not considered the question of the extent to which the lower court has the power to impose such conditions under the Act of June 26, 1895, *supra*, 48 P.S. § 92. Thus, both *Commonwealth ex rel. Martocello v. Martocello*, 148 Pa.Super. 562, 25 A.2d 855 (1942) (condition that child be sent to a private school), and *Commonwealth ex rel. Keer v. Cress*, 194 Pa.Super. 529, 168 A.2d 788 (1961) (children placed in Methodist Home for Children) involved conditions imposed with the consent of one parent, and in neither case was the court's power to impose the condition challenged on the other parent's appeal or considered by this court. Furthermore, in *Commonwealth ex rel. Keer v. Cress, supra,* we noted that the authority of a court may depend on the nature of the proceeding, and we expressly stated that we were not then deciding whether the lower court has the same power to place children in an institution in a habeas corpus action brought by one parent against the other parent as in a juvenile court proceeding. Finally, in *Lewis v. Lewis,* 271 Pa.Super. 519, 414 A.2d 375 (1979), we noted that our affirmance of the lower court's order that the custodial parent and her children undergo "child-centered parent counseling" by the Child Welfare Services of Allegheny County did not involve the mother's right to custody but rather the father's right to visit his children. On appeal, the mother's argument was that the lower court should have permanently, instead of temporarily, suspended the father's visitation rights; she did not question the court's power to order counseling but said that the children's father, not she, should have been the one to undergo counseling.

It is apparent that none of these cases is inconsistent with, or, indeed, even pertinent to, our decision today. It may be assumed that in a custody case, the lower court has considerable discretion in framing its decree. Also, it may be

assumed that sometimes the court may abuse its discretion. In *In re Rinker, supra,* 180 Pa.Super. at 148, 117 A.2d at 783, we observed that

> the Juvenile Court Law was not intended to provide a procedure to take the children of the poor and give them to the rich, nor to take the children of the illiterate and give them to the educated, nor to take the children of the crude and give them to the cultured, nor to take the children of the weak and sickly and give them to the strong and healthy.

A similar observation may be made with regard to a decree granting custody: the court must not, under the rubric of protecting the best interest of the child, interfere too much with the parent's care and custody. However, we are not here concerned with the general issue of the boundaries of a court's discretion. The issue before us is very different, and very narrow. It is this: When may the court, as a condition of a decree granting custody, require the parent to submit to the intervention of an *agency of the State*? And to this question, the Legislature had given a plain answer: The court may require submission to the intervention, but if, and only if, the requirements of the Juvenile Act are satisfied. *And see Ellerbe v. Hooks, supra; In re Hernandez, supra; In the Interest of LaRue, supra.*

–3–

Even if the issue of State intervention were not raised, we should be unable to affirm the order of the lower court.

We have had frequent occasion to define the respective responsibilities of this court and the lower court in a child custody case. For example, in *Lewis v. Lewis, supra,* we said:

> In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett,* 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the

appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer, supra; Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra* [263 Pa.Super. 27, 396 A.2d 1359 (1979)]; *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. *See Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester*, 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra.* 267 Pa.Super. at 240–41, 406 A.2d at 783–84.

■ Here, as has been noted above, the record is not only not "complete," it is exceedingly brief, including no evidence besides a brief interrogation of the mother; and the lower court's opinion is not only not "comprehensive," it is summary, referring to off-the-record facts and containing no discussion of the evidence—such as it was—and no findings of fact, as for example regarding the fitness of the mother, and the sort of home she would provide.

The day is long gone when children may be treated so summarily. *Garrity v. Garrity*, 268 Pa.Super. 217, 407 A.2d 1323 (1979); *Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 985 (1978); *Commonwealth ex rel. Forrester v. Forres-*

ter, 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra; Gunter v. Gunter, supra; Augustine v. Augustine, supra; Commonwealth ex rel. Grillo v. Shuster, supra.* On the record here, we are unable to say, and the lower court was unable to say, what disposition would be in Shari's and Kathy's best interest.

The order of the lower court is reversed and the case remanded for proceedings consistent with this opinion. Upon the completion of those proceedings, a new appeal may be taken, as provided by law.

PRICE, J., files a dissenting opinion in which WICKERSHAM, J., joins.

HESTER, J., files a dissenting statement.

PRICE, Judge, dissenting:

This appeal is before us from an order of the court below awarding custody of Shari L. Frank and Kathy A. Frank to their natural mother, appellant Wanda Lee Frank, on the condition that temporary supervision of the children be exercised by the Cumberland County Children's Services (C.C.C.S.). For the following reasons, I would affirm.

Appellant and Robert Frank were married on February 17, 1962. Shari and Kathy, the subjects of this appeal, were born on August 15, 1966, and April 19, 1968, respectively.[1] Three other children were born during the marriage which terminated in divorce in November of 1976. Subsequent to the divorce, Shari and Kathy resided with their paternal grandparents in Phoenix, Arizona, with Robert Frank retaining custody of these children from May of 1977 to January of 1978, initially at his home in Carlisle, then in Richmond, Virginia. In January, appellant gained custody of the children pursuant to an understanding with her former husband. (N.T. 6).

On February 24, 1978, appellant filed a petition for a court order confirming custody upon which a hearing was held on April 5, 1978, before the Honorable Dale F. Shughart. Rob-

---

1. At the time of the hearing, Shari was twelve years of age and Kathy ten.

ert Frank did not contest the award of custody to appellant, and the court fashioned the aforementioned order.

Because appellant was ultimately awarded custody of the children, she does not question that portion of the order, but contests instead the validity of the proviso requiring temporary supervision by C.C.C.S. As a consequence of the children's physical custody not being in dispute, our review need not be subject to the entire gamut of considerations applicable in a typical contest between opposing parties wishing custody of the child. In the latter case, even granting that there is always the opportunity to correct a misjudgment, the psychological consequences of· an error in the child's placement are enormous. Therefore, we insist that the hearing judge adhere strictly to all evidentiary rules during the presentation of testimony, and supply this court with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's decision. *Appeal of White*, 270 Pa.Super. 165, 411 A.2d 231 (1979); *Martincheck v. Martincheck*, 262 Pa.Super. 346, 396 A.2d 788 (1979); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977). In a case such as that *sub judice*, however, in which merely temporary supervision, and not permanent custody, is to be determined, we are more disposed to allow the hearing court greater latitude in accepting testimony and in composing an opinion with a less rigorous analysis than would be acceptable in a normal custody proceeding. Nevertheless, we hasten to add that because our paramount concern remains the best interest and welfare of the child, *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978); *Shoup v. Shoup*, 257 Pa.Super. 263, 390 A.2d 814 (1978); *Tomlinson v. Tomlinson*, 248 Pa.Super. 196, 374 A.2d 1386 (1977), we are not bound by deductions or inferences made by the hearing judge which have no competent evidence to support them and which do not appear to affect the child's best interest. *Tomlinson v. Tomlinson, supra; Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973).

Instantly, the hearing judge noted: "It is because of the stormy relationship that has existed between the two par-

ents and the allegation of improper care given the children that the court directed Cumberland County Children's Services to keep in touch with the situation." At the hearing, appellant herself admitted that Kathy was mentally retarded and special provisions had to be made for her education. Specifically, she testified that Kathy was attending the Capital Area Intermediate Unit School and arrangements had been made to cover the extraordinary expenses involved. (N.T. 6). Appellant conceded that C.C.C.S. was previously involved in the familial situation in relation to the custody of two boys not involved in this appeal. Ms. Gillingham of C.C.C.S. stated that Kathy was in the service's care and custody from May 9, 1970, to December 20, 1971, on the basis of neglect and dependency.[2]

Confronted with these facts, it was not erroneous for the court to require temporary supervision. The Commonwealth is vitally concerned with infants, and it has a duty to protect and supervise the interests of minor children in custody disputes. *Davidyan v. Davidyan*, 229 Pa.Super. 495, 327 A.2d 139 (1974); *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973); *Commonwealth ex rel. Thomas v. Gillard*, 203 Pa.Super. 95, 198 A.2d 377 (1964). Its concern is no less in cases of this type. It would be unconscionable to casually cast two growing children into a potentially volatile situation absent some supervision. Although appellant argues that the court does not possess the power to mold such

---

**2.** At the hearing, Ms. Gillingham was not sworn prior to responding to questions propounded by the court. Counsel for appellant made a timely objection to the introduction of such unsworn statements, and was in effect overruled when the court instructed her not to object. It is true that the Act of March 21, 1772, 1 Sm.L. 387, § 1, *as amended*, 28 P.S. § 251, provides in pertinent part:

"All and all manner of crimes, offenses, matters, causes and things whatsoever to be inquired of, heard, tried and determined or done or performed by virtue of any law of this commonwealth, or otherwise, shall and may be inquired of, heard, tried and determined by . . . witnesses . . . either by taking the solemn affirmation or any oath in the usual or common form. . . ."

Nevertheless, because of the nature of the hearing, the temporary nature of the order, and the totality of other circumstances, I believe the introduction of the unsworn statements does not necessitate a re-hearing.

a condition absent specific statutory authority, this contention is ill-founded. The power to provide for the parents' visitation privileges is similarly not conferred by explicit statutory mandate,[3] yet this is, of course, an ordinary function of the court in custody disputes. The license to regulate such visitation is implicit in the precept requiring the court to provide for the child's best interest. While visitation is indeed the sole condition normally imposed, it is hardly unique for the hearing court to shape more extensive provisions to ensure the child's welfare.

In *Commonwealth ex rel. Martocello v. Martocello*, 148 Pa.Super. 562, 25 A.2d 855 (1942), for example, an eleven year old boy resided with his mother following the parents' separation. In a hearing precipitated by the mother's filing of a petition for custody, the child was awarded to the father on condition that the boy be placed in the Waldron Academy for the ensuing school year; both parents " 'to see the child at the Academy . . . under the proper regulations of the Master of the Waldron Academy, until further order of the court.' " *Id.*, 148 Pa.Super. at 563, 25 A.2d at 856.

It would be illogical to invest our courts with the weighty responsibility of ensuring a minor's welfare, while simultaneously demanding that they be emasculated of the power to fully effect their best judgment. Notwithstanding appellant's belief that she could adequately care for the children (N.T. 8), in view of the circumstances prevailing at the time of the hearing, particularly the educational difficulties with Kathy, the condition imposed was not improper.

In any event, the order specifically noted that the supervision was temporary. As has long been noted, custody orders are unique and delicate matters subject to constant review and modification. *Friedman v. Friedman, supra; Common-*

3. The Act of June 26, 1895, P.L. 316, § 2, 48 P.S. § 92 provides: "In all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child."

*wealth ex rel. Hickey v. Hickey*, 216 Pa.Super. 332, 264 A.2d 420 (1970); *Commonwealth ex rel. Thomas v. Gillard, supra.* If supervision of the children by C.C.C.S. becomes unnecessary, appellant could then petition the court to have it removed.

I would affirm the order of the Court of Common Pleas of Cumberland County.

WICKERSHAM, J., joins in this dissenting opinion.

HESTER, Judge, dissenting:

It is obvious that the Hearing court was acting in the best interest of the children. In view of that court's past experience in this situation, as well as the circumstances involved, i. e., a mentally retarded, then 10-year old girl, the Hearing court was attempting to give the mother-appellant support and guidance by its directive, "that the welfare of the children requires that the ... Children's Services should keep in touch with the situation." The court merely provided for temporary supervision by Children's Services. Kathy had been under the care and custody of that agency from May 4, 1970 to December 20, 1971. This fact could not be ignored by the Hearing court. This proceeding was not contested by the father who voluntarily placed these girls in their mother's custody in January, 1978. I would affirm on the opinion of President Judge Shughart of the court below.